**In re BANK OF AMERICA, N.A. (Formerly Known As NationsBank, N.A.), Relator.**

**No. 01–00–00944–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 27, 2001.

Opinion on Denial of Rehearing May 10, 2001.

Edward F. Fernandes, Jill Warren, Austin, for Relator.

Randy J. McClanahan, Houston, for Real Party In Interest.

Panel consists of Justices MIRABAL, TAFT, and NUCHIA.

## OPINION

TAFT, Justice.

The issue for this Court is whether plaintiff's counsel should be disqualified after extensively reviewing and digesting approximately 135 pages of defendant's privileged information, obtained through no wrongdoing. The trial court[1] denied the motion to disqualify. We conclude the motion should have been granted and conditionally grant the writ of mandamus.

### The discovery dispute below

Nitla S.A. de C.V. (Nitla), the plaintiff and real party in interest, sued several defendants below.[2] The defendants included the relator, NationsBank, N.A., now known as Bank of America, N.A. (Bank of America). Nitla's causes of action are grounded in fraud.

On March 22, 1999, the trial court's predecessor ruled that approximately 158 specific, Bates-stamped pages of documents,

---

1. The Honorable Levi J. Benton, judge of the 215th District Court of Harris County, Texas.

2. The lawsuit below is *Nitla S.A. de C.V. v. Analysis and Research for Capital Manage-* *ment, Ltd., et al.,* trial court cause no. 96–44152, in the 215th District Court of Harris County, Texas.

presented for in camera inspection pursuant to Bank of America's claims of attorney-client and work-product privilege, were not so privileged. At the March 22 hearing, the predecessor judge handed many of the in camera documents to counsel for Nitla at the time he made the ruling, over Bank of America's objection.[3] Bank of America had no opportunity to seek mandamus relief before these in camera documents were given to Nitla.[4] The remaining in camera documents were tendered to Nitla by the predecessor judge in April 1999, after Bank of America had filed its petition for writ of mandamus.

### The first mandamus proceeding

Three days after the first in camera documents had been handed to Nitla, Bank of America sought mandamus relief. Ultimately, this Court stayed further dissemination of the documents, and the trial court ordered Nitla to return the in camera documents to the trial court.[5] On June 19, 2000, this Court held[6] that most of the in camera documents were privileged. *See In re NationsBank, N.A. n/k/a Bank of America, N.A.*, No. 01–99–00278–CV, 2000 WL 799807 (Tex.App.—Houston [1st Dist.], Jun. 19, 2000, orig. proceeding) (not designated for publication). After this Court's June 19, 2000 ruling, neither

Bank of America nor Nitla sought mandamus relief in the Supreme Court of Texas.

### Motion to disqualify

On July 14, 2000, in the trial court, Bank of America moved to disqualify Nitla's counsel. Bank of America argued disqualification was appropriate because (1) Nitla's lawyers had consistently disregarded their ethical and professional obligations to gain an unfair advantage, and (2) all the factors that the Supreme Court of Texas considered in *In re Meador*, 968 S.W.2d 346 (Tex.1998) as supporting disqualification had been satisfied. Bank of America reminded the trial court and Nitla of what it had said at the March 22, 1999 hearing: an attorney who reviewed an opposing party's privileged documents could be subject to disqualification.

Following Nitla's response and a hearing, the trial court signed an order on August 21, 2000, denying Bank of America's motion to disqualify Nitla's counsel. In the order,[7] the trial court concluded as follows:

(1) Counsel for Nitla obtained the in camera documents as a result of a judicial proceeding. The trial court noted that lawyers routinely argue that their clients need immediate relief when such really is not the case, and he declined to characterize such

---

**3.** Bank of America also asked the trial judge to stay the production, to allow it time to seek an emergency stay from the court of appeals. Counsel for Bank of America stated: "and there are some cases saying that whenever an attorney gets privileged materials and reviews them based upon that knowledge, they can later be disqualified."

**4.** That same day, counsel for Bank of America sent by facsimile transmission a letter to Nitla's counsel reiterating his belief that the tendered in camera documents were privileged, requesting that the documents not be reviewed or distributed, and advising that a petition for writ of mandamus would be filed within 48 hours.

**5.** Nitla confirmed that it is bound by the provisions of a confidentiality agreement concerning the in camera documents. *See In re NationsBank, N.A. n/k/a Bank of America, N.A.*, No. 01–99–00278–CV, slip op. at 7, 2000 WL 799807 (Tex.App.—Houston [1st Dist.], Jun. 19, 2000, orig. proceeding) (not designated for publication).

**6.** Justice Mirabal dissenting.

**7.** As amended by the order signed on September 5, 2000.

oral advocacy as unprofessional, unethical, or misleading.

(2) Nitla reasonably relied on the action of the predecessor judge in providing it with the in camera documents.

(3) Bank of America had "clean hands" in the dispute concerning the turning over of the in camera documents.

(4) Nitla's counsel extensively reviewed and digested the privileged information.

(5) There was no competent evidence to support Bank of America's assertion and argument that Nitla's lawyers developed their trial strategy based on their extensive discussion of the privileged documents in briefs filed with this Court in the first mandamus proceeding.

(6) The trial court was prepared and available to quash deposition notices and to sustain objections to specific questions lodged during any deposition to prevent the use of privileged information.

(7) Bank of America's argument that it had been prejudiced by the disclosure of its privileged information was nothing more than advocacy and conclusory statements.

(8) The trial court was not persuaded that Nitla's counsel should be disqualified, even absent evidence of harm to Nitla.

Bank of America filed this second mandamus proceeding after the trial court's August 21 ruling.

### Arguments of the parties

In this mandamus proceeding, Bank of America argues that, by failing to properly review the evidence in the record supporting disqualification, the trial court abused its discretion in denying its motion to disqualify. Bank of America maintains that this is a "factually unique case ... because it combines the erroneous actions of a trial court in releasing privileged documents and the inexcusable attempts of Nitla and its counsel to gain an unfair advantage."

According to Bank of America, the standards of *Meador* apply to this case. Applying *Meador,* Bank of America insists that the trial court abused its discretion by not disqualifying Nitla's counsel: (1) because the evidence in the record established that (a) Nitla made a strategic decision to risk disqualification by insisting upon immediate receipt of the in camera documents, and then proceeding to review and analyze them, and (b) Bank of America was prejudiced by the disclosure of the privileged information; and (2) because there is no evidence in the record to support prejudice to Nitla if its counsel is disqualified.

Nitla responds that there is no legal precedent where a court has disqualified counsel after counsel obtained review of documents by court order and pursuant to the discovery process. According to Nitla, *Meador* is distinguishable because, in that case, information was improperly obtained outside of the legal process. Nitla contends, as the trial court concluded, that its counsel did not violate the Texas Disciplinary Rules or the ABA Formal Opinion 94–382. Even if *Meador* does apply, Nitla argues that application of the *Meador* factors does not lead to disqualification and that it will be severely prejudiced if its attorneys are disqualified.

### Standard of review

■ An order denying a motion to disqualify counsel is reviewable by a petition for writ of mandamus. *See, e.g., Meador,* 968 S.W.2d at 348; *National Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 133 (Tex. 1996). Appellate relief is generally deemed inadequate. *See Godbey,* 924 S.W.2d at 133.

In *Meador,* an attorney received unsolicited, privileged and confidential information of the opposing party. 968 S.W.2d at 349. The attorney was not directly involved in improperly obtaining the confidential information. 968 S.W.2d at 351, 354. We find that these facts are not substantively different from those before us in this mandamus proceeding. Nitla did not obtain Bank of America's privileged, in camera documents through any wrongdoing on its part or that of its counsel. *See, e.g., Contico Int'l, Inc. v. Alvarez,* 910 S.W.2d 29, 35 (Tex.App.—El Paso 1995, orig. proceeding) (misconduct to continue representation when lawyer has gained confidences of opposing party through theft, deceit, inadvertence, or other means), *overruled in part by Meador,* 968 S.W.2d at 354 (disapproving of *Contico* to extent it held attorney must be disqualified when attorney gains possession of opponent's confidential information through no wrongdoing on part of attorney). Nor did Nitla obtain the in camera documents through any inadvertence of Bank of America. *See, e.g., Granada Corp. v. First Court of Appeals,* 844 S.W.2d 223, 226 (Tex.1992) (inadvertent disclosure of privileged documents). The fact that the disclosure of the privileged documents to Nitla in 1999 did not become unauthorized until this Court reversed the trial court's ruling in 2000, does not, in our view, impact the application of *Meador.*

Accordingly, we conclude that whether the trial court's decision to deny the motion to disqualify Nitla's counsel constituted an abuse of discretion depends upon an application of the factors set forth in *Meador.* Our review of the trial court's decision will be based on whether, under *Meador,* given the evidence presented to the trial court, the trial court could have reasonably decided only to disqualify Nitla's counsel. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) ("The relator must establish that the trial court could reasonably have reached only one decision.").

With respect to resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court, unless the trial court's decision is shown to be arbitrary and unreasonable. *Id.* at 839–40. Our review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* at 840.

Mention must also be made of the relative importance of the "severity of disqualification" versus protection of privileged information. The supreme court stated in *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990), citing *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 399 (Tex.1989):

> Disqualification is a severe remedy. The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic.

(Citations omitted.)

However, the supreme court also stated in *Coker:* "The preservation of clients' secrets and confidences is not an option." 765 S.W.2d at 399. The supreme court has adopted a strict rule requiring disqualification whenever counsel undertakes representation of an interest that is adverse to that of a former client. *See Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 833 (Tex.1994). Underlying this strict rule is the conclusive presumption that confidences and secrets were imparted to the attorney during the prior representation. *See Phoenix Founders, Inc.,* 887 S.W.2d at 833; *Coker,* 765 S.W.2d at 400.

Finally, the supreme court emphasized in *Meador*:

Without doubt, there are situations where a lawyer who has been privy to privileged information improperly obtained from the other side must be disqualified, even though the lawyer was not involved in obtaining the information. Discovery privileges are an integral part of our adversary system. By protecting attorney-client communications and an attorney's work product, they encourage parties to fully develop cases for trial, increasing the chances of an informed and correct resolution.

968 S.W.2d at 351.

We do not mean to imply that the facts in this second mandamus proceeding involve the imparting of confidential information during a prior representation, as was the case in *Coker* and *Phoenix Founders, Inc.* There is no prior representation issue here. We cite to *Coker* and *Phoenix Founders, Inc.* for the purpose of demonstrating the policy reason underlying the ban on representation of a client against a former client: the protection of a client's confidences and privileged information.

### *Application of Meador in this second mandamus proceeding*

#### 1. *The Meador factors.*

 A trial court, giving due consideration to the importance of discovery privileges, must consider all the facts and circumstances presented to it to determine whether the interests of justice require disqualification. *See Meador*, 968 S.W.2d at 351. In this exercise of judicial discretion, the trial court should consider, among others, the following factors:

(1) whether the attorney knew or should have known that the material was privileged;

(2) the promptness with which the attorney notifies the opposing side that he received its privileged information;

(3) the extent to which the attorney reviews and digests the privileged information;

(4) the significance .of the privileged information, *i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

(5) the extent to which movant may be at fault for the unauthorized disclosure;

(6) the extent to which the nonmovant will suffer prejudice from the disqualification of his attorney.

*Id.* at 351–52.

 It is acknowledged, by all, that counsel for Nitla was given the in camera documents by the predecessor judge after the judge ruled that they were not privileged. In its August 21, 2000 order, the trial court exonerated Nitla's counsel of having violated the Texas Disciplinary Rules and the ABA Formal Opinion 94–382, as alleged by Bank of America. We see no evidence in the record before us that compels a different conclusion.[8]

However, Nitla's counsel was also aware that Bank of America continued to assert privilege with respect to the documents, intended to seek mandamus relief, and, in fact, sought and obtained mandamus relief with respect to most of the documents for which Bank of America had asserted privilege. It is also acknowledged that Bank of America "has clean hands in this dispute."

In summary, *Meador* factor (1) does not weigh much in favor of disqualification;

---

**8.** However, the absence of a disciplinary violation does not mean that a court may not disqualify an attorney. *See In re Meador*, 968 S.W.2d 346, 350 (Tex.1998).

*Meador* factor (2) is inapplicable; and *Meador* factor (5) weighs toward disqualification. We next consider *Meador* factors (3), (4), and (6).

2. *Factor (3)—The extent to which counsel for Nitla reviewed/digested the privileged information.*

This factor is conceded. The August 21, 2000 order states: "This Court agrees, and the appellate record supports the argument that Nitla's counsel has extensively reviewed and digested the privileged information." Nitla did not dispute this assertion either in the trial court or in its response here.

3. *Factor (4)—The significance of the privileged information, i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice.*

In the August 21, 2000 order, the trial court characterized Bank of America's claims of prejudice as advocacy, conclusory statements, and unsupported by the evidence. We have reviewed the reporter's record of the August 3, 2000 hearing on the motion to disqualify. In that record, the trial court acknowledged that it had read the motion to disqualify as well as the response and supplement. Attached to the motion, among other items, were the following exhibits: (1) the reporter's record of the March 22, 1999 hearing; (2) the reporter's record of the July 6, 1999 hearing; (3) a copy of this Court's opinion of June 19, 2000; and (4) copies of the two main response briefs filed by Nitla in cause no. 01–99–00278–CV.

This Court is familiar with the 48–page and the 35–page response briefs filed by Nitla in the first mandamus proceeding. Those briefs quote from and describe the in camera documents to invoke the crime/fraud exception to the attorney-client and work product privileges, as well as to support Nitla's allegations that Bank of America was engaged in fraudulent activities. In fact, those briefs rely almost entirely on the in camera, privileged documents to support Nitla's case for application of the crime/fraud exception and allegations of fraud. The briefs written by Nitla's counsel are evidence of the significance of the in camera privileged documents, the extent to which the privileged information has been woven into Nitla's case, and the prejudice to Bank of America caused by the disclosure of its privileged information. *Meador* factor (4) weighs heavily toward disqualification.

4. *Factor (6)—The extent to which the nonmovant will suffer prejudice from the disqualification of its attorney.*

As the order of September 5, 2000 amending the August 21, 2000 order states, there is no evidence in the hearing record of harm to Nitla. However, Nitla argued as follows in response to the motion to disqualify, and the trial court stated it had read the response:

> [Bank of America's] contention that Nitla will not be unduly prejudiced by its counsel's disqualification is frivolous. This Court can take judicial notice that this case has been on file since 1996 and contains literally tens of thousands of pages of pleadings. The summary judgment filings and supporting documents are enormous. Approximately fifty (50) days of deposition testimony have been taken in this case. This case is nearly ready for trial and Nitla would undoubtedly suffer extraordinary prejudice if its attorneys were disqualified after more than four years of litigation. It is highly unlikely that Nitla would be able to find qualified attorneys who would pursue this case if all of their present counsel were disqualified.

*Meador* factor (6) weighs against disqualification.

### 5. *Balancing the Meador factors.*

On the one side, factors (1) and (6) support the trial court's ruling that Nitla's counsel should not be disqualified. Nitla strenuously argues that it has been neither unprofessional nor unethical in its obtaining, use, and review of Bank of America's in camera documents and that such was, initially, judicially blessed. We saw no evidence to the contrary in the record. If Nitla's counsel is disqualified, will Nitla be severely prejudiced? If severe prejudice equals a substantial delay in going to trial while new counsel prepares for trial, the answer is "yes."

On the other side, the evidence is overwhelming under factors (3) and (4) that Nitla's counsel has reviewed and digested some 135 pages of documents this Court has held privileged, and woven the materials in those documents into its case of fraud against Bank of America. It is undisputed that the release of such privileged information was without the fault of Bank of America (factor (5)). While Nitla was neither unprofessional nor unethical, it is also true that Nitla strenuously advocated that it immediately receive Bank of America's in camera documents, without even a 10-day stay to allow Bank of America to seek mandamus relief. On the day Nitla received the in camera documents, it knew of Bank of America's intent to seek mandamus relief; within three days, the intent became reality.

Disqualification is a severe remedy and should be discouraged as a dilatory trial tactic. However, there is no evidence of dilatory tactics here by Bank of America. It is difficult to see what else Bank of America could have done to obtain review of the trial court's ruling on its privileged documents or to protect the confidentiality of its privileged information used by Nitla, once this Court had ruled most of the in camera documents were privileged. Under the reasoning in *Coker, Phoenix Founders, Inc.,* and *Meador,* in the circumstances of this case, the severity of disqualification must give way to the importance of maintaining the confidentiality of privileged information.

### *Conclusion*

Our review of the record compels the conclusion that the trial court could only have found, after conducting an analysis under *Meador,* that Nitla's counsel should be disqualified. Therefore, we hold that the trial court abused its discretion when it denied Bank of America's motion to disqualify Nitla's counsel, and that the Bank of America has no adequate remedy by appeal. We are confident that the trial court will promptly reconsider and grant Bank of America's motion to disqualify. Our writ of mandamus will issue if it does not.

Both parties have filed certain documents under seal in this Court. Any sealing motions that have not been previously granted are granted hereby. Within 10 days of the date of this opinion, the Clerk of the Court is directed to destroy all sealed documents, unless the party that filed such sealed documents files a written request, within such 10-day period, to have such documents returned. The Clerk will return such documents to such party only to the extent that the copies do not contain notations of the Court.

Justice MIRABAL dissenting.

MIRABAL, Justice, dissenting.

I dissent.

As the majority notes, I dissented from

the June 19, 2000 opinion of this Court[1] that held the involved documents were privileged and not subject to discovery. In my opinion, the trial court did not abuse its discretion when it determined the subject documents were discoverable because they were excepted out of the claimed privileges by virtue of the crime/fraud exception under Tex.R.Evid. 503(d)(1).

Now that the majority is again finding the trial court abused its discretion in a follow-up matter, I am compelled to dissent again.

The trial court here clearly did not act "without any reference to guiding rules or principles."[2] Rather, it applied the guiding rules and principles set out in *In re Meador*, 968 S.W.2d 346, 351–52 (Tex. 1998), and its conclusions are reasonable in light of the record. In my opinion, the trial court did not abuse its discretion in refusing to disqualify Nitla's counsel.

Applying the *Meador* factors, in light of the record before us, the following conclusions can be reasonably drawn:

1. Nitla's attorneys were told, by a trial judge's ruling, after a hearing and in camera inspection of the documents, that the material was *not* privileged; thus, they did not know, nor should they have known, the material was privileged. (Factor one, *Meador*, 968 S.W.2d at 351.)
2. Bank of America witnessed the trial judge hand the documents to Nitla's attorney, making it clear the documents were covered by the confidentiality agreement the judge had approved; thus, Bank of America had prompt notice that Nitla's attorney had received the documents. (Factor two, *id.* at 352.)
3. The trial judge's availability during discovery and trial to prevent the use of privileged information, and the evidence that Nitla's trial strategy would not be based on the privileged documents[3] (all copies of which have been returned to Bank of America), support the conclusion that Bank of America has not been significantly prejudiced by the disclosure of the information; thus, the significance of the privileged information has been minimized. (Factor four, *id.* at 352.)

Further, the extent to which Nitla will suffer prejudice from the disqualification of its counsel is great, as is clear from the fact that the case has been pending more than four years, approximately 50 depositions have been taken, the record contains tens of thousands of pages of pleadings, and the case is nearly ready for trial. (Thus, *Meador* factor six, *id.* at 352, also weighs against disqualification.)

The trial court clearly considered "all the facts and circumstances to determine whether the interests of justice require disqualification," *id.* at 351, including the

---

1. *In re NationsBank, N.A., n/k/a Bank of America, N.A.*, No. 01–99–00278–CV, 2000 WL 799807 (Tex.App.—Houston [1st Dist.], Jun. 19, 2000, orig. proceeding) (not designated for publication).

2. "A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without any reference to guiding rules or principles." *In re Meador*, 968 S.W.2d 346, 353 (Tex.1998).

3. For example, in its order, the trial court specifically noted: "The Court repeated[ly] asked BOA's counsel to identify a single witness that Nitla's counsel sought to depose whose identity was not otherwise known. To date, the Court has received [no] response to this query."

six factors listed in *Meador*.[4] The trial court's conclusions are supported by the record. Because there was no abuse of discretion in this matter, mandamus relief should be denied.

## OPINION ON MOTION FOR RE-HEARING AND MOTION FOR EN BANC CONSIDERATION

TAFT, Justice.

Nitla S.A. de C.V. (Nitla), the real party in interest, has filed (1) a motion for en banc reconsideration and motion for rehearing, (2) supplemental authority in support of the motion for en banc reconsideration and rehearing, (3) a motion to present oral argument, and (4) a motion for leave to file its reconsideration and rehearing motion under seal. Relator, Bank of America, has not responded.

The motion for rehearing is **denied.**

The full Court has reviewed the motion for en banc reconsideration, and a majority of the justices of the full Court **deny** the motion.

The motion to present oral argument is **denied.** The motion for leave to file the reconsideration and rehearing motion under seal is **granted.** The documents filed under seal in connection with the motion for en banc reconsideration and motion for rehearing will be subject to the ruling made by this Court in its order of April 12, 2001.

In the motion for en banc reconsideration and motion for rehearing, Nitla takes issue with the first sentence of this Court's March 27, 2001 opinion, stating that it is "inaccurate" that Nitla's counsel extensively reviewed and digested 135 pages of Bank of America's privileged information.[1]

We decline to enter into a debate over the correct number of pages of privileged documents. Nitla misses the point. Our opinion rested on the content of the privileged material disclosed and the extent to which the privileged information had been woven into Nitla's case, rather than on the number of pages. This Court's analysis in its opinion of March 27, 2001 remains unchanged.

Justice MIRABAL dissenting from the denial of the motion for oral argument and the denial of the motion for en banc reconsideration and motion for rehearing for the reasons set forth in her dissenting opinion of March 27, 2001.

A majority of the justices of the Court deny the motion for en banc consideration.

---

**4.** I note that the Texas Supreme Court emphasized the six factors "apply only when a lawyer receives an opponent's privileged materials outside the normal course of discovery." *Meador*, 968 S.W.2d at 352. Clearly, Nitla received the subject documents during the normal course of discovery, and as a result of a court order. This is a case of first impression. The supreme court did not envision this type of situation when it set out the *"Meador* factors." However, even when those factors are applied here, it is reasonable for the trial court to have concluded that disqualification of counsel is not appropriate.

**1.** We note that in its motion for en banc consideration and motion for rehearing, Nitla disputes for the first time the number of Bank of America's privileged documents it reviewed and used. Nitla's response did not complain of the numbers set forth in Bank of America's petition for writ of mandamus.