**PHOENIX FOUNDERS, INC., Phoenix Mutual Life Insurance Company, and P/F–Campbell Crossing–Phase II, Limited, Relators**

v.

**The Honorable John McClellan MARSHALL, Judge, Respondent.**

**No. D–4612.**

Supreme Court of Texas.

Oct. 6, 1994.

Rehearing Overruled Dec. 22, 1994.

---

Robert D. Ettinger, Austin, Charles Dunn, Lubbock, for relators.

Don C. Dennis, Lubbock, Ann Hartley, Dan Morales, Austin, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, DOGGETT, CORNYN and GAMMAGE, Justices, join.

In this original proceeding, we consider whether a law firm must be disqualified from ongoing litigation because it rehired a legal assistant who had worked for opposing counsel for three weeks. We hold that disqualification is not required if the rehiring firm is able to establish that it has effectively screened the paralegal from any contact with the underlying suit. Because this standard had not been adopted in Texas prior to the trial court's disqualification order, we deny mandamus relief without prejudice to allow the trial court to reconsider its ruling in light of today's opinion.

The present dispute arises from a suit brought by Phoenix Founders, Inc. and others ("Phoenix") to collect a federal-court judgment against Ronald and Jane Beneke and others. The law firm of Thompson & Knight represented Phoenix in the original federal-court suit, which began in 1990 and ended in 1991, and has also represented them in the collection suit since its commencement in 1992. The Benekes have been represented in the latter suit by the firm of David & Goodman.

In July of 1993, Denise Hargrove, a legal assistant at Thompson & Knight, left her position at that firm to begin working for David & Goodman as a paralegal. While at David & Goodman, Hargrove billed six-tenths of an hour on the collection suit for locating a pleading. She also discussed the case generally with Mark Goodman, the Benekes' lead counsel.

After three weeks at David & Goodman, Hargrove returned to Thompson & Knight to resume work as a paralegal. At the time of the rehiring, Thompson & Knight made no effort to question Hargrove in regard to po-tential conflicts of interest resulting from her employment at David & Goodman.

Three weeks after Hargrove had returned, counsel for the Benekes wrote to Thompson & Knight asserting that its renewed employment of Hargrove created a conflict of interest. The letter demanded that the firm withdraw from its representation of Phoenix.

Hargrove resigned from Thompson & Knight the next week, after having been given the option of either resigning with severance pay or being terminated. The firm itself, however, refused to withdraw from the case. The Benekes then filed a motion to disqualify.

After an evidentiary hearing, the trial court initially overruled the Benekes' motion, stating that it found no evidence that confidential client information was actually provided to Hargrove. On motion for reconsideration, however, the trial court granted the Benekes' motion and disqualified Thompson & Knight from further representation of Phoenix. The disqualification order states that Hargrove possesses confidential information relating to the Benekes, and that all such confidential information was imputed to the firm of Thompson & Knight at the time she was rehired.

This Court has not previously addressed the standards governing a disqualification motion based on the hiring of a nonlawyer employee. With respect to lawyers, however, this Court has adopted a standard requiring disqualification whenever counsel undertakes representation of an interest that is adverse to that of a former client, as long as the matters embraced in the pending suit are "substantially related" to the factual matters involved in the previous suit. *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 399–400 (Tex.1989). This strict rule is based on a conclusive presumption that confidences and secrets were imparted to the attorney during the prior representation. *Coker,* 765 S.W.2d at 400.

The *Coker* rule has been applied mainly in the context of a single attorney or firm representing two clients with adverse interests. *See, e.g., Clarke v. Ruffino,* 819 S.W.2d 947, 951 (Tex.App.—Houston [14th Dist.] 1991,

orig. proceeding); *Insurance Co. of N. Am. v. Westergren,* 794 S.W.2d 812, 814 (Tex. App.—Corpus Christi 1990, orig. proceeding); *Howard v. Texas Dep't of Human Servs.,* 791 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1990, no writ); *Home Ins. Co. v. Marsh,* 790 S.W.2d 749, 754 (Tex.App.—El Paso 1990, orig. proceeding). A similar analysis has also been applied in the context of a lawyer moving from one firm to another, when the two firms represent opposing parties in ongoing litigation. *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295 (Tex. App.—Dallas 1988, orig. proceeding). For purposes of this situation, the *Petroleum Wholesale* court articulated a second conclusive presumption: that an attorney who has obtained confidential information shares it with other members of the attorney's firm, because of the interplay among lawyers who practice together. 751 S.W.2d at 299.

The Benekes argue that the standards applied to the hiring of lawyers should also apply to the hiring of paralegals. Thus, on the basis of *Petroleum Wholesale,* the Benekes urge that the entire firm of Thompson & Knight must be automatically disqualified because of the confidences Hargrove obtained while working at David & Goodman.

■ We agree that a paralegal who has actually worked on a case must be subject to the presumption set out in *Coker;* that is, a conclusive presumption that confidences and secrets were imparted during the course of the paralegal's work on the case. *See Coker,* 765 S.W.2d at 400. This presumption serves to prevent the moving party from being forced to reveal the very confidences sought to be protected. *See id.* Moreover, virtually any information relating to a case should be considered confidential: the Disciplinary Rules define "confidential information" to encompass even unprivileged client information. TEX.DISCIPLINARY R.PROF.CONDUCT 1.05(a) (1991), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9).

■ We disagree, however, with the argument that paralegals should be conclusively presumed to share confidential information with members of their firms. The Disciplinary Rules require a lawyer having direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer. TEX.DISCIPLINARY R.PROF.CONDUCT 5.03(a). If the supervising lawyer orders, encourages, or even permits a nonlawyer to engage in conduct that would be subject to discipline if engaged in by a lawyer, the lawyer will be subject to discipline. R. 5.03(b). Thus, to the extent that the Disciplinary Rules prohibit a lawyer from revealing confidential information, R. 1.05(b)(1), they also prohibit a supervising lawyer from ordering, encouraging, or permitting a nonlawyer to reveal such information.

The Texas Committee on Professional Ethics has considered the application of these rules in the context of a "right hand" legal secretary or legal assistant leaving one small firm and joining another that represents an adverse party. Tex.Comm. on Professional Ethics, Op. 472, 55 TEX.B.J. 520 (1992). The Committee concluded that the Rules do not require disqualification of the new law firm, provided that the supervising lawyer at that firm complies with the Rules so as to ensure that the nonlawyer's conduct is compatible with the professional obligations of a lawyer. *Id.* at 521.

This view is consistent with the weight of authority in other jurisdictions. The American Bar Association's Committee on Professional Ethics has considered whether a law firm that hires a paralegal may continue representing clients whose interests conflict with interests of the former employer's clients on whose matters the paralegal has worked. ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1526 (1988). After surveying case law and ethics opinions from a number of jurisdictions, the Committee concluded that the new firm need not be disqualified, as long as the firm and the paralegal strictly adhere to the screening process set forth in the opinion, and as long as the paralegal does not reveal any information relating to the former employer's clients to any person in the employing firm. *Id.* A number of courts have since relied on the ABA's opinion to allow continued representation under similar conditions. *See Makita*

*Corp. v. U.S.,* 819 F.Supp. 1099, 1105 (Ct.Int'l Trade 1993); *Smart Indus. Corp. v. Superior Court,* 179 Ariz. 141, 876 P.2d 1176, 1184–85 (Ariz.Ct.App.1994); *In re Complex Asbestos Litigation,* 232 Cal.App.3d 572, 283 Cal.Rptr. 732, 746–47 (1991).

Underlying these decisions is a concern regarding the mobility of paralegals and other nonlawyers. A potential employer might well be reluctant to hire a particular nonlawyer if doing so would automatically disqualify the entire firm from ongoing litigation. This problem would be especially acute in the context of massive firms and extensive, complex litigation. Recognizing this danger, the ABA concluded that "any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect confidentiality of client information." ABA Op. 1526 at 2. *See also Herron v. Jones,* 276 Ark. 493, 637 S.W.2d 569, 571 (1982); *In re Complex Asbestos Litigation,* 283 Cal.Rptr. at 739–40, 746.

■ We share the concerns expressed by the ABA, and agree that client confidences may be adequately safeguarded if a firm hiring a paralegal from another firm takes appropriate steps in compliance with the Disciplinary Rules. *See* ABA Op. 1526 at 3. Specifically, the newly-hired paralegal should be cautioned not to disclose any information relating to the representation of a client of the former employer. The paralegal should also be instructed not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation. Additionally, the firm should take other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment, absent client consent after consultation. *See id.*

■ Each of these precautions would tend to reduce the danger that the paralegal might share confidential information with members of the new firm. Thus, while a court must ordinarily presume that some sharing will take place, the challenged firm may rebut this presumption by showing that sufficient precautions have been taken to guard against any disclosure of confidences. *See Smart Ind. Corp. v. Superior Court,* 876 P.2d at 1185; *Herron v. Jones,* 637 S.W.2d at 571; *In re Complex Asbestos Litigation,* 283 Cal.Rptr. at 747.

■ Absent consent of the former employer's client, disqualification will always be required under some circumstances, such as (1) when information relating to the representation of an adverse client has in fact been disclosed, or (2) when screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked. *See* ABA Op. 1526 at 3. Ordinarily, however, disqualification is not required as long as "the practical effect of formal screening has been achieved." *In re Complex Asbestos Litigation,* 283 Cal.Rptr. at 747.

At the disqualification hearing in the present case, Thompson & Knight sought to introduce evidence regarding Hargrove's separation from the department handling the collection suit. The trial court, however, sustained the Benekes' objection to the questioning on the ground that the "Chinese Wall" concept—i.e., formal screening—had been rejected in *Petroleum Wholesale.*

The *Petroleum Wholesale* court did conclude that, "under the specific facts of [that] case," a Chinese Wall would not rebut the presumption of shared confidences. 751 S.W.2d at 301. The court did not, however, rule out the possibility that screening would rebut the presumption in some circumstances; nor did the court consider the viability of screening in the context of nonlawyer employees. In view of our holding that the presumption of shared confidences is rebuttable in the present context, the trial court erred in extending *Petroleum Wholesale* to the facts of this case. We need not decide whether *Petroleum Wholesale* itself was correctly decided, or whether it remains viable under the new Disciplinary Rules.[1]

---

1. The *Petroleum Wholesale* decision was based in part on Canon 9 of the Texas Code of Profession-

In reconsidering the disqualification motion, the trial court should examine the circumstances of Hargrove's employment at Thompson & Knight to determine whether the practical effect of formal screening has been achieved. The factors bearing on such a determination will generally include the substantiality of the relationship between the former and current matters; the time elapsing between the matters; the size of the firm; the number of individuals presumed to have confidential information; the nature of their involvement in the former matter; and the timing and features of any measures taken to reduce the danger of disclosure. *See* Comment, *The Chinese Wall Defense to Law–Firm Disqualification,* 128 U.PA.L.REV. 677, 711–715 (1980) (listing factors); *see also Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 HARV. L.REV. 1244, 1367–69 (discussing "structural, procedural, and educational" methods for preventing disclosure). The fact that the present case involves representation of adverse parties in the same proceeding, rather than two separate proceedings, increases the danger that some improper disclosure may have occurred. *See HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 628 (Tex. App.—Austin 1992, writ denied). Evidence regarding the other factors, however, may tend to rebut the presumption of shared confidences.

The ultimate question in weighing these factors is whether Thompson & Knight has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level. *See* Comment, 128 U.PA. L.REV. at 713. As with any disqualification motion, the trial court must adhere to an exacting standard so as to discourage any use of a disqualification motion as a dilatory tactic. *See Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990).

Because we have modified the controlling legal standard, the writ of mandamus is de-

nied without prejudice to allow the trial court to reconsider the disqualification motion in light of today's opinion. The stay order previously issued by this Court remains in effect only so long as necessary to allow the trial court to act.

ENOCH, J., not sitting.

---

al Responsibility, which required a lawyer to avoid even the appearance of impropriety. *See Petroleum Wholesale,* 751 S.W.2d at 300–01. Phoenix points out that the new Disciplinary Rules of Professional Conduct, effective January 1, 1990, do not include any similar prohibition. For that reason, Phoenix argues that the new

rules do not require automatic disqualification even for attorneys. *See generally* HAZARD & HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT § 1:10:207 (2d ed. 1990) (discussing disqualification rules applicable to attorneys).