In re Relators BELL HELICOPTER TEXTRON, INC., Bell Helicopter Textron, A Division of Textron Canada Ltd., and Textron, Inc.

No. 2–02–058–CV.

Court of Appeals of Texas, Fort Worth.

May 20, 2002.

Rehearing Overruled Nov. 14, 2002.

Charles H. Smith, John W. Moore, John J. Reenan, David V. Denny, Smith & Moore, L.L.P., Dallas, for relators.

Michael D. Sydow, Ronald J. Kormanik, Dwain Dent, Sydow, Kormanik, Carrigan and Eckerson, L.L.P., Houston, for real parties.

Panel B: DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

Relators Bell Helicopter Textron Inc., Bell Helicopter Textron, a Division of Textron Canada Ltd., and Textron Inc., defendants in the trial court, seek mandamus relief from the trial court's order denying their motion to disqualify plaintiffs' trial counsel in the underlying lawsuit. The real parties in interest (RPIs) in this original proceeding are the plaintiffs below. Relators contend that RPIs' counsel should be disqualified because they have employed as a consulting expert a former Bell employee who knows a great deal of Bell's confidential information about the issues in the underlying suit. Relators contend that a "Chinese wall" cannot be used effectively in this case. Because we agree that Bell's former employee cannot be effectively screened, we conditionally grant the petition for writ of mandamus.

### II. Background Facts

RPIs are suing relators for damages allegedly caused by a Bell 412 helicopter crash that occurred in August 1997. RPIs have hired as a consulting expert a former Bell Helicopter Textron (Bell) employee, Caren Vale. Vale worked for Bell for over ten years, from 1977 to 1987.

While at Bell, Vale worked as an engineer in Bell's System Safety Group. She worked on the development of safety systems for aircraft manufactured by Bell, including crash-resistant fuel systems and energy-attenuating seats, at least some of which were on the model 412 aircraft. Later, she became an accident investigator and then Chief of Flight Safety. In these latter two capacities, Vale worked with Bell's inhouse and outside counsel to develop legal strategies for defending against lawsuits that arose out of helicopter crashes involving Bell's helicopters, including the model 412 helicopter.

Relators discovered that RPIs had hired Vale as a consulting expert in the underlying case when they were noticed for a deposition and the notice disclosed that Vale would also attend. Upon learning this, relators immediately moved to quash the deposition. At the hearing on the motion to quash, relators also sought to have Vale disqualified as an expert. The trial court granted the motion to quash, but refused to rule on relators' disqualification request because no motion requesting Vale's disqualification as an expert had been filed.

Relators later moved to disqualify RPIs' counsel because of Vale's possession of Bell's work product and confidential litigation information. Relators contended that, while Vale worked for Bell, she was privy to Bell's confidential information, trial strategy, work product, and attorney-client communications that arose in matters substantially related to those in the underlying case. Relators contended that RPIs could not effectively screen Vale's work for them so that there was no threat that she would divulge Bell's confidential information to RPIs. The trial court denied relators' motion to disqualify, and relators seek mandamus relief from that ruling.

### III. Standard of Review

 The granting or denial of a motion to disqualify is reviewable by mandamus. *See Nat'l Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 133 (Tex.1996) (orig.proceeding); *In re Bahn,* 13 S.W.3d 865, 872 (Tex.App.-Fort Worth 2000, orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when

there is no other adequate remedy at law. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

■ With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding).

■ Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

## IV. Attorney Disqualification Based on Nonattorney's Possession of Confidential Information

■ Whenever counsel undertakes representation of an interest that is adverse to that of a former client, the lawyer is disqualified from representing the new client if the matters embraced in the former lawsuit are "substantially related" to the factual matters involved in the pending lawsuit. *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 833 (Tex.1994) (orig.proceeding); *Petroleum Wholesale, Inc. v. Marshall*, 751 S.W.2d 295, 299 (Tex.

App.-Dallas 1988, orig. proceeding). This strict rule is based on a conclusive presumption that confidences were imparted to the attorney during the prior representation. *Phoenix Founders*, 887 S.W.2d at 833. The purpose of the presumption is to prevent the party seeking disqualification from being forced to reveal the very confidences sought to be protected. *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 74 (Tex.1998) (orig.proceeding). This conclusive presumption has also been applied to legal secretaries, paralegals, legal assistants, and freelance consultants. Such a support staff member who has worked on a case "must be subject to . . . a conclusive presumption that confidences and secrets were imparted." *Id.*

■ Similarly, if an attorney moves from one law firm to another, there is a conclusive presumption that an attorney who obtained confidential information from the prior firm shares it with the members of his new firm. *Phoenix Founders*, 887 S.W.2d at 834. This latter presumption is not automatically applied to paralegals and other nonlawyers, however, in order not to unnecessarily impede their mobility for employment purposes. *Id.* at 834–35. Instead, the new firm can rebut application of the presumption if (1) it strictly adheres to a screening process and (2) the nonlawyer does not reveal any information relating to the former employer's clients to any person in the new firm. *Id.* at 834.

■ The screening process requires the following steps:
- The newly hired nonlawyer must be cautioned not to disclose any information relating to the representation of a client of the former employer.
- The nonlawyer must be instructed not to work on any matter on which she worked during the prior employment, or regarding which she has informa-

tion relating to the former employer's representation.

- The new firm should take other reasonable steps to ensure that the nonlawyer does not work in connection with matters on which she worked during the prior employment, absent client consent after consultation.

*Id.* at 835.

To determine whether the screening has been effective, courts should consider: the substantiality of the relationship between the former and current matters; the time elapsed between the matters; the size of the firm; the number of individuals presumed to have confidential information; the nature of their involvement in the former matter; and the timing and features of any measures taken to reduce the danger of disclosure. *Id.* at 836. Also, if the old firm and the new firm represent adverse parties in the same proceeding, rather than in different proceedings, the danger of improper disclosure by the nonlawyer is increased. *Id.* But even if the new employer uses the screening process, disqualification will always be required—absent the former client's consent—under some circumstances, such as:

- when information relating to the representation of an adverse client has in fact been disclosed; or
- when screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked.

*Id.* at 835.

To show that a substantial relationship requiring disqualification exists, the party seeking disqualification must prove that the facts and issues involved in both the former and present litigation are so similar that there is a genuine threat that confidences revealed to the party's former counsel will be divulged to his present adversary. *In re Epic Holdings, Inc.,* 985 S.W.2d 41, 51 (Tex.1998) (orig.proceeding); *NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 399–400 (Tex.1989) (orig.proceeding); *see also Texaco, Inc. v. Garcia,* 891 S.W.2d 255, 257 (Tex.1995) (orig.proceeding) (holding that substantial relationship existed where cases involved similar liability issues, scientific issues, defenses, and strategies). To meet its burden of proof, the movant must provide evidence of specific similarities capable of being recited in the disqualification order. *Coker,* 765 S.W.2d at 400. If this burden is met, the movant is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *Id.* The actual disclosure of confidences need not be proven; the issue is whether a genuine threat of disclosure exists because of the similarity of the matters. *Epic Holdings,* 985 S.W.2d at 51; *Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 467 (Tex.1994) (orig.proceeding).

## A. Vale is Privy to Confidential Information About Bell's Cases Involving the Model 412 Aircraft

In this case, RPIs' pleadings show that the suit against relators arises out of a model 412 Bell helicopter crash. RPIs contend, among other things, that relators were negligent in designing and installing an unsafe fuel system on the helicopter, in deciding not to retrofit the aircraft with a safe fuel system even though relators knew one was available, and in not warning RPIs about the unsafe system. The record shows that, as an accident investigator and Chief of Flight Safety for Bell, Vale was present at numerous meetings with Bell's inhouse and outside counsel where legal strategy related to numerous lawsuits was discussed, including suits involving the model 412 aircraft. Topics of

discussion included attorney mental processes related to the design and manufacture of aircraft systems.[1] Vale also worked on developing crash-resistant fuel systems for Bell aircraft, including the model 412 aircraft. Thus, there is ample evidence that Vale was privy to confidential information about matters substantially similar to the matters involved in the underlying lawsuit.

 Based on this evidence, Vale is clearly subject to the conclusive presumption that confidences and secrets about Bell's cases involving model 412 aircraft were imparted to her. *See Am. Home Prods. Corp.*, 985 S.W.2d at 74. Also, this evidence is specific enough that it is capable of being recited in a disqualification order. *See Coker*, 765 S.W.2d at 400. Because Vale is not a lawyer, however, we cannot conclusively presume that Vale has shared or will share the information she obtained while working for Bell with RPIs' attorneys. *See Phoenix Founders*, 887 S.W.2d at 834. Instead, we must determine whether RPIs' attorneys can effectively screen Vale's work so that there is no threat that Vale may reveal any of Bell's confidential information to RPIs. In making this determination, we focus not on Vale's credibility but on the similarity of the matters at issue. *See Epic Holdings*, 985 S.W.2d at 51; *Grant*, 888 S.W.2d at 467.

## B. Vale Cannot be Effectively Screened

██ To show that they have effectively screened Vale's work, RPIs tendered two affidavits from Vale. In her first affidavit, Vale states that she has never violated any confidentiality agreement, divulged Bell's proprietary information or trade secrets, or discussed or revealed any of Bell's trial strategies, attorney-client privileged information, or attorney work product. These statements are merely conclusory and are therefore not probative evidence on the disqualification issue. *See Am. Home Prods. Corp.*, 985 S.W.2d at 74 (holding that lawyer's and paralegal's conclusory, uncontroverted opinions about what constituted "confidential information" had no probative value and did not raise a fact issue about whether counsel should be disqualified); *see also* TEX.R. CIV. P. 166a(c) (providing that, in a summary proceeding, the testimony of an interested witness must be of the type that can be readily controverted). Vale also states that Bell has not made her aware of any trial tactics and she has no confidential information that may have a bearing on the case. These bald assertions do not controvert relators' specific evidence that Vale was privy to many of Bell's legal strategies in suits involving aircraft safety systems and the model 412 aircraft.

In her second affidavit, Vale states that she has never worked "on the case involving the incident in Cuernavaca for Bell or anyone else." We presume, for purposes of this opinion, that this is a reference to the underlying lawsuit. Vale also states that she has agreed not to disclose to RPIs any information regarding legal representation of Bell that she acquired while associated with Bell or from anyone who represented Bell and not to work on any "legal matter" she worked on while associated with Bell. She states that, in her association with RPIs' attorneys, she has relied exclusively on her general engineering and

---

1. Vale's other duties as an accident investigator and Chief of Flight Safety included acting as manufacturer's representative and working with investigating authorities, such as the National Transportation Safety Board and the Federal Aviation Administration. But there is no evidence, as RPIs suggest, that the NTSB or FAA were privy to Bell's litigation strategies, attorney work product, or client communications.

aviation knowledge, skill, and experience. Relators also stipulated in the trial court that, at the time they moved to disqualify RPIs' counsel, they had no direct evidence that Vale had shared any privileged or confidential information with RPIs' attorneys or that RPIs' attorneys had requested such information from Vale.

These representations about Vale's working arrangement with RPIs or relators' stipulation are not evidence of effective screening. Vale worked for Bell on litigation involving the safety systems on the model 412 aircraft, and the underlying case involves a model 412 aircraft with an allegedly unsafe fuel system design. Thus, the issues in the underlying case and those in the lawsuits on which Vale worked for Bell are substantially related, and the genuine threat of disclosure exists simply because of the similarity of the matters involved in the former and the current cases. Vale's actual disclosure of confidences need not be proven before disqualification is required. *See Epic Holdings*, 985 S.W.2d at 51. To the contrary, because RPIs have hired Vale to work on the underlying case that is against Bell, as one of the relators, Vale will be required to work on the other side of a litigation matter that is substantially related to other litigation on which she has previously worked for Bell. Under these circumstances, disqualification is required despite RPIs' attempts to effectively screen Vale. *See Phoenix Founders*, 887 S.W.2d at 835 (stating that disqualification will always be required when the nonlawyer necessarily would be required to work on the other side of the same or a substantially related matter).

RPIs also claim that their screening of Vale's work is effective because of the great amount of time that elapsed between Vale's employment for Bell and her work in the underlying case—nearly fourteen years—and the immediate timing of the measures taken to reduce the danger of disclosure. However, because Vale worked on litigation for Bell involving substantially the same matters related to the model 412 aircraft that are at issue in the underlying case and because the nature of Vale's involvement in the cases on which she worked for Bell was significant, RPIs cannot effectively screen Vale despite their thorough efforts to do so.

## V. Waiver

Regardless of whether Vale can be effectively screened, RPIs further contend that any knowledge Vale has is discoverable because Bell has designated Vale as a testifying expert on many occasions, including cases involving the fuel system on the model 412 aircraft. RPIs contend that relators have thereby waived whatever privileges they assert existed regarding Vale's confidential knowledge. To support their position, RPIs rely on the discovery rules governing testifying experts.

The discovery rules provide that a party may obtain the following information from testifying experts:

- the subject matter on which the expert will testify;
- the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is sought, regardless of when and how the factual information was acquired;
- the expert's mental impressions and opinions concerning the case, any methods used to derive them, and a brief summary of the basis for the impressions and opinions; and
- all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or pre-

pared by or for the expert in anticipation of the expert's testimony.

TEX.R. CIV. P. 192.3(e), 194.2(f).

 The supreme court has held that if communications with an expert may be discovered during the course of litigation by opposing counsel, that information cannot be considered confidential, and the fact that it has been shared with opposing counsel cannot be the basis for disqualification. *Am. Home Prods. Corp.,* 985 S.W.2d at 73–74. RPIs contend that, because Vale's mental impressions and opinions and her factual knowledge underlying those impressions and opinions were discoverable in prior litigation due to her testifying-expert status, they are not confidential in the underlying litigation. RPIs further contend that, because Vale testified for Bell as an expert witness in several prior lawsuits, *any* information she has acquired is discoverable, regardless of when or how the information was acquired. We do not read the discovery rules this broadly. Rule 192.3(e) provides only that the testifying expert's mental impressions and opinions *concerning the case,* and the facts known by the expert that relate to or form the basis for the expert's mental impressions and opinions *formed or made in connection with the case in which discovery is sought,* are discoverable. TEX.R. CIV. P. 192.3(e); *see also Aetna Cas. & Sur. Co. v. Blackmon,* 810 S.W.2d 438, 440 (Tex.App.-Corpus Christi 1991, orig. proceeding) (holding that designation of party employee as a testifying expert waived attorney-client, work product, and party communications privileges only as to the privileged information the expert relied on in forming his mental impressions and opinions related to the case). Accordingly, the facts known to Vale concerning the model 412 aircraft and its safety systems are discoverable based on her status as a former testifying expert for Bell only if she has been designated as a testifying expert with regard to those matters.[2]

There is some evidence in the mandamus record that Vale has acted as a testifying expert for Bell. David Broiles, who has worked as outside counsel for Bell on numerous cases states by affidavit that Vale, as a Bell employee, served "as an assistant and expert with the litigation team." Vale's own affidavit states, "In some matters I have represented Bell as a consultant and expert witness." The record also contains a "Preliminary Report of Aircraft Accident" that was prepared by Vale and Bell in 1987. The report appears to be an expert's report and contains conclusions about the probable cause of the accident discussed in the report. Finally, the record contains an excerpt from a deposition given by Vale, to which is attached a list of cases in which she served "either as a witness, consultant or expert" for Bell. While none of these documents specifically state that Vale was a testifying expert, as opposed to a consulting one, the facts that Vale gave a deposition and produced a report on at least one accident are some evidence that she acted as a testifying expert.

Nonetheless, there is no evidence that Vale served as a testifying expert for Bell with regard to the model 412 aircraft. The accident report refers to the Bell mod-

---

**2.** The discovery rules provide that the facts known to an expert and underlying the expert's mental impressions and opinions related to a case are discoverable "regardless of when and how the factual information was acquired." TEX.R. CIV. P. 192.3(e)(3). Because, as we discuss below, there is no evidence that Vale has served as a testifying expert for Bell with regard to the model 412 aircraft, we need not decide whether this phrase refers to information acquired regarding matters that would otherwise be protected by the attorney-client or attorney work product privileges.

el 212 aircraft, not the 412. In addition, none of the aircraft models mentioned in the list of cases in which Vale served as a witness, consultant, or expert is the model 412 aircraft. Several of the cases listed match those in Broiles's affidavit. They are: Canada (model UH–18 or UH–1B), Murphy (model UH–IE), Krissinger (model AH–IS), Seastrunk (model OH–58), Higgins (model AH–IS), Miller (model AH–IG), Dowd/Ellis (model AH-IS), Stultz (model 206), Nakahira (model AH–IS), Ramsey (model 206), and Martinez (model 206). Broiles's affidavit does not state, however, that he worked with Vale on any litigation involving the 412 aircraft. While this evidence is sufficient to show that Vale served as a testifying expert for Bell with regard to several models of aircraft, it does not establish that Vale was a testifying expert regarding the model 412. Further, there is no evidence in the record that the model 412 aircraft or its fuel safety system is substantially similar to the aircraft for which Vale may have served as a testifying expert.

Because the record does not show that Vale served as a testifying expert for Bell regarding the model 412 aircraft or that any of the aircraft for which Vale served as a testifying expert are substantially similar to the model 412 aircraft, there is no evidence that relators have waived their right to assert that the information Vale knows about the model 412 aircraft and its fuel safety system or about Bell's litigation strategies involving the model 412 aircraft is confidential.

### VI. Vale as a Fact Witness

■■■■ RPIs also assert that whatever information Vale knows that is relevant to the underlying case is discoverable because she has first-hand knowledge of rele-
vant facts and must therefore be designated as a fact witness. The supreme court has held that a party cannot shield its employees who have knowledge of facts relevant to a case from the discovery process simply by designating them as consulting-only experts. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554–55 (Tex. 1990) (orig.proceeding). If employees obtain factual information relevant to a case simply by virtue of their employment as employees, rather than as consulting experts, that information is discoverable. *Id.* Indeed, while the identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are *not* discoverable, the facts known first-hand to the consulting expert *are* discoverable. Tex.R. Civ. P. 192.3(e); *Axelson*, 798 S.W.2d at 554.[3]

■■■ Relators appear to agree with RPIs that Vale is or will be a fact witness in the underlying case. Relators asserted in the trial court that Vale was a fact witness for Bell, "not only internally with design, but externally with investigations for Bell that she conducted." In fact, at the hearing on their motion to quash a deposition at which Vale was scheduled to attend as a consulting expert for RPIs, relators asserted that Vale should not be allowed to attend the deposition because of her status as a fact witness for Bell. *See* Tex.R. Civ. P. 199.5(d) (providing that an oral deposition must be conducted in the same manner as if the testimony were being obtained in court during trial); Tex.R. Civ. P. 267 (providing that witnesses on both sides may be placed "under the rule" so they cannot hear the testimony of any other witness in the case); Tex.R. Evid. 614 (same). Relators con-

---

3. This rule does not, however, extend to consulting-only experts whose only source of fac- tual information was the consultation. *Axelson*, 798 S.W.2d at 554.

tended that Vale was not "a person whose presence is ... essential to the presentation of the cause"—an exception to the exclusionary reach of rules 267 and 614—because she was a fact witness. Tex.R. Civ. P. 267(b)(3); Tex.R. Evid. 614(3).

■ Information that may be discovered from a fact witness does not, however, include information about an opponent's litigation strategies, attorney work product, or other information exempted from discovery by the attorney-client privilege. *See* Tex.R. Civ. P. 192.3(c) ("A person has knowledge of relevant facts when that person has or may have knowledge of any *discoverable* matter.") (emphasis added); *id.* (providing that an expert can be a fact witness only with regard to knowledge obtained first-hand and not obtained in preparation for trial or in anticipation of litigation). Accordingly, while factual information about the model 412 aircraft that Vale knows first-hand because of her employment with Bell may be discoverable because she has been or should be designated as a fact witness, Vale's knowledge about Bell's litigation strategies, attorney work product, and privileged communications is not discoverable based on her fact-witness status.

### VII. Conclusion

The record shows that, while Vale worked for Bell, she obtained confidential information about the model 412 aircraft and its fuel safety system, as well as confidential information about Bell's litigation strategies and attorney work product in lawsuits involving the model 412 aircraft. RPIs cannot effectively screen Vale because, as a consulting expert, she will be required to work on the other side of litigation that is substantially related to litigation on which she has previously worked for Bell. Relators have not waived their right to assert that the information

Vale knows about the model 412 aircraft and its fuel safety system or about Bell's litigation strategies involving the model 412 aircraft is confidential because the record does not specifically show that Vale has served as a testifying expert for Bell regarding the model 412 aircraft or any aircraft that is substantially similar to the model 412. In addition, Vale's knowledge of Bell's litigation strategies, attorney work product, and privileged communications concerning the model 412 aircraft is not discoverable based on Vale's fact-witness status.

Because RPIs' counsel cannot effectively screen Vale, they must be disqualified from representing RPIs in the underlying lawsuit. The trial court abused its discretion by denying relators' motion to disqualify RPIs' counsel. We direct the trial court to vacate its order denying relators' motion to disqualify and enter an order granting the motion. Our writ will issue only if the trial court fails to act in accordance with this opinion.