**DENY; and Opinion Filed June 5, 2013.**



**In The**

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00124-CV

## IN RE RSR CORPORATION AND QUEMETCO METALS LIMITED, INC., Relators

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-13797**

### OPINION

Before Justices Moseley, Francis, and Fillmore
Opinion by Justice Fillmore

Relators RSR Corporation and Quemetco Metals Limited, Inc. (collectively RSR) filed

this petition for writ of mandamus seeking to overturn the trial court's order disqualifying RSR's

trial counsel, Bickel & Brewer, from further participation in the case. Because we cannot say the

trial court abused its discretion by disqualifying Bickel & Brewer, we deny the petition.

### Background[1]

RSR and real parties in interest, Inppamet S.A. a/k/a Inppamet Ltda. and Plastic and

Metal Parts, Inc. (collectively Inppamet), are involved in the production and sale of anodes used

in the mining industry to extract metals from ore. RSR and Inppamet were parties to a 2003

licensing agreement involving the sale of anodes in South America. In 2008, RSR sued

Inppamet in this case in Texas, and Inppamet sued RSR in Chile. Each party accused the other

---

[1] Our recitation of the facts is based on the record that supports the trial court's order.

of breaching the licensing agreement and misappropriating confidential information. RSR was represented in the Chilean litigation by Bofill Mir & Alvarez Jana (BMAJ) and in this case by Bickel & Brewer.

From April 2007 until April 2010, Inppamet employed Hernan Sobarzo as a finance manager. Sobarzo was responsible for calculating and reporting to both Inppamet and RSR the anode fee payments due under the licensing agreement. It is undisputed that Sobarzo was directly involved with Inppamet's litigation team and had access to Inppamet's privileged and confidential information relating to this litigation. Sobarzo's participation included formulating litigation strategy, gathering evidence, preparing discovery responses, investigating the facts at issue, and providing information requested by, and otherwise communicating with, Inppamet's litigation counsel. He also participated in an audit of Inppamet's sales and fee calculations based on the number of anodes sold in South America during the term of the licensing agreement, performed at the request of RSR in 2009.

In April 2010, Sobarzo resigned from his position at Inppamet. Before leaving, he copied approximately 2.3 gigabytes of data consisting of company email and other electronic files. Some of these files contained privileged and confidential information, including email communications with Inppamet's litigation counsel. On April 20, 2010, Sobarzo emailed James Johnson, an RSR employee, and offered to provide information relevant to the "Federal and State cases" between RSR and Inppamet. On October 12, 2010, Sobarzo again emailed RSR describing an allegedly fraudulent transfer Inppamet was contemplating and disclosing that Inppamet purportedly owed RSR approximately $3 million in unpaid fees relating to anode sales.

Jorge Bofill, an attorney at BMAJ, responded to Sobarzo's emails and then met with Sobarzo. Bofill advised Sobarzo that both BMAJ and Bickel & Brewer were interested in talking to Sobarzo about the lawsuits. Sobarzo agreed to meet with the attorneys, but only on the

condition that he was paid for his time and travel expenses. Bofill attested he advised Sobarzo that Sobarzo could not reveal to RSR's lawyers any privileged attorney-client communications or any of Inppamet's trade secrets, and that Sobarzo agreed.

Beginning in December 2010, lawyers from both BMAJ and Bickel & Brewer met with Sobarzo and interviewed him about Inppamet and anode fee payments due RSR under the licensing agreement. Around this time, Bofill confirmed to Sobarzo that "we" had "agreed to contract" with Sobarzo as a consultant "under the terms that you and I discussed, on the understanding that you would not be a witness and that thus your help on those terms must be of use to us." After consulting with Bickel & Brewer, RSR's chief executive officer, Robert Finn, made the decision to retain Sobarzo as a consultant in this case.

Between December 2010 and June 2011, Sobarzo met with attorneys and representatives of the Bickel & Brewer firm over nineteen times for over 150 hours, both in Chile and in New York. During these meetings, Sobarzo orally provided substantial information about Inppamet to RSR and showed Bickel & Brewer and BMAJ attorneys documents he had taken from Inppamet at the end of his employment. Sobarzo invoiced BMAJ for each of these meetings at a rate of $1,600 per day. In March 2011, Bickel & Brewer attorneys requested that Sobarzo agree to provide Bickel & Brewer with the documents Sobarzo had taken from Inppamet and to be a witness in this case. Sobarzo told William Brewer of Bickel & Brewer that he would do so only if RSR agreed in writing to compensate him for his time, provide him with "indemnity" and "immunity" with respect to any legal harm that resulted from his conduct, and provide him with "job loss insurance." According to Sobarzo, Brewer assured him that these conditions would be met.

Ultimately, RSR and Sobarzo negotiated a consulting agreement. The agreement was signed by BMAJ and Sobarzo; however, Bickel & Brewer was involved in obtaining the

–3–

agreement and was provided with an executed copy of the agreement in May 2011. Sobarzo apparently unilaterally terminated the consulting agreement in a July 2011 email message.

Shortly after the consulting agreement was signed, Sobarzo traveled to Bickel & Brewer's New York offices with his laptop and a pen drive containing certain documents he had taken in electronic form from Inppamet's offices. Some of these documents were privileged and confidential.[2] Diego Abogabir, a BMAJ attorney, reviewed the documents. According to Abogabir, he immediately closed any document containing the name of a person he knew or believed to be a lawyer representing Inppamet. During his document review, Abogabir invited Bickel & Brewer attorneys into the conference room to discuss the documents he reviewed. Bickel & Brewer indicated it possessed memoranda that mentioned the Inppamet documents that were reviewed. Abogabir also copied a number of the documents, including privileged documents, onto a pen drive.

In June 2011, at the direction of Bickel & Brewer, BMAJ arranged to have a Chilean attorney represent Sobarzo. Bickel & Brewer then identified Sobarzo, in an RSR discovery response, as a person with knowledge of relevant facts and served a written document request directed to Sobarzo through his attorney. Inppamet asserted privilege objections to the document request. On June 28, 2011, Sobarzo signed an affidavit drafted by Bickel & Brewer that detailed alleged fraudulent activity by Inppamet. Bickel & Brewer filed the affidavit in this case. Six days later, Sobarzo signed a new affidavit recanting his June 28 affidavit and characterizing the statements in that prior affidavit as false.

---

[2] The special master in this case determined that certain of the documents in question were "privileged," and RSR did not seek review by the trial court of that determination. The special master made no determination as to whether the documents on the pen drive were "confidential." The Texas Supreme Court has observed in the context of an attorney disqualification case that "virtually any information relating to a case should be considered confidential: the Disciplinary Rules define 'confidential information' to encompass even unprivileged client information." *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834 (Tex. 1994) (orig. proceeding) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a)). The Texas Supreme Court later noted that it had "eschewed the notion that 'confidential information' encompassed only privileged information." *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 75 (Tex. 1998) (orig. proceeding).

Inppamet moved to disqualify Bickel & Brewer from serving as RSR's counsel in this case based on the firm's interaction with Sobarzo. A special master heard and denied the motion. As agreed by the parties, the trial court reviewed the special master's decision de novo. Relying on *In re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998) (orig. proceeding), the trial court granted Inppamet's motion to disqualify Bickel & Brewer. RSR filed this petition for writ of mandamus, asserting the trial court abused its discretion by disqualifying Bickel & Brewer from further participation in the case.

**Standard of Review**

Because there is no adequate remedy by appeal, mandamus relief is appropriate to correct a trial court's clear abuse of discretion in disqualifying a party's chosen counsel. *See In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam); *In re SAExploration, Inc.*, No. 14-12-00981-CV, 2012 WL 6017717, at *3 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, orig. proceeding) (per curiam) (mem. op.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 840. The relator must establish the trial court could reasonably have reached only one decision. *Id.* Even if we would have decided the issue differently, we may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*[3] Our review is much less deferential with respect to a trial court's

---

[3] Although the trial court's order disqualifying Bickel & Brewer contains various statements that could be interpreted as "fact findings," these "findings" do not constitute true "findings of fact" because they were not separately filed as required by Texas Rule of Civil Procedure 299a. *See* TEX. R. CIV. P. 299a (requiring findings of fact to be separately filed and not simply recited in judgment); *Casino Magic Corp. v. King*, 43 S.W.3d 14, 19 n.6 (Tex. App.—Dallas 2001, pet. denied). Accordingly, we employ the standard of review applicable to cases where no findings have been requested or filed. *Casino Magic Corp.*, 43 S.W.3d at 19 n.6. In the absence of findings, we imply all necessary fact findings in support of the trial court's order. *In re Williams*, 328 S.W.3d 103, 112 (Tex. App.—Corpus Christi 2010, orig. proceeding [mand. denied]);

–5–

determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in relief by mandamus. *Id.*

## Attorney Disqualification Based on Nonattorney's Possession of Confidential Information

Disqualification of a party's trial counsel is a severe remedy. *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding) (per curiam) (quoting *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding)). It can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam). In determining whether to disqualify counsel, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic. *Id.*

In considering disqualification based on trial counsel's access to the opposing party's privileged or confidential information, the Texas Supreme Court has employed several disparate analyses that depend upon the manner in which counsel obtained the information. In *In re Meador*, 968 S.W.2d 346 (Tex. 1998) (orig. proceeding), Patricia Peterson, an executive assistant to the president of CLN, found, read, and copied a number of documents related to a lawsuit filed against her supervisor and CLN by a prior employee, Dana Meador. Thereafter, Peterson resigned her employment with CLN, hired Meador's attorney to represent her in her own lawsuit against CLN, and provided her attorney with copies of the privileged documents she

---

*see also In re Weekley Homes, L.P.*, 295 S.W.3d 309, 316 (Tex. 2009) (orig. proceeding) (recognizing trial court's decision on discovery issues "implies a finding" that requested discovery was not reasonably available); *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d 688, 689 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (denying petition for writ of mandamus because trial court's implied finding supported order denying motion to disqualify counsel). When a sufficient record is brought forward, the trial court's implied findings may be subject to legal and factual sufficiency challenges. *See In re Lynd Co.*, 195 S.W.3d 682, 686 (Tex. 2006) (orig. proceeding). In this case, RSR has not challenged the sufficiency of the evidence to support any of the trial court's implied findings.

had taken from CLN. *Id.* at 349. However, Peterson did not work with her attorney on a daily basis regarding the *Meador* litigation. *Id.* at 353–54.

When CLN discovered Meador's counsel had the misappropriated documents, it moved for the return of the documents and the disqualification of Meador's attorney. *Id.* The trial court ordered the documents returned, but denied the motion to disqualify. *Id.* The supreme court affirmed the trial court's decision, and determined that when an attorney receives the opposing party's privileged information outside the normal course of discovery and through no "wrongdoing" of his own, the trial court should consider a variety of factors before disqualifying the attorney, including:

1) whether the attorney knew or should have known that the material was privileged;

2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3) the extent to which the attorney reviews and digests the privileged information;

4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5) the extent to which the movant may be at fault for the unauthorized disclosure;

6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id.* at 351–52. The supreme court specifically noted that it was "express[ing] no opinion on the proper standard for disqualifying an attorney who was directly involved in wrongfully procuring an opponent's documents." *Id.* at 352.

The supreme court has applied a different analysis when counsel received confidential information from a nonattorney employee who acquired knowledge of the information while employed by the opposing party's counsel or legal department. *See In re Am. Home Prods.*

*Corp.*, 985 S.W.2d at 74–76. In *American Home*, Diana Palacios, a legal assistant (alternately referred to as an investigator or a consultant), was hired by one of the defendants to work "freelance" with the defendant's local counsel in litigation involving the Norplant birth control device. *Id.* at 71. In this role, Palacios interviewed fact and expert witnesses, investigated individual plaintiffs, and wrote numerous memoranda about the case. *Id.* at 71–72. Palacios later approached counsel for plaintiffs in the Norplant litigation for a job. *Id.* at 72. Palacios disclosed that she had worked for the defendant in the litigation, but claimed not to have worked on "legal" matters. *Id.* After being told by the defendant's local counsel that Palacios did not have access to privileged information in the Norplant litigation, plaintiffs' counsel hired her. *Id.* The defendant for whom Palacios had previously worked then moved to disqualify her new employer from the Norplant litigation. *Id.* The trial court denied the motion, and the defendant sought mandamus relief. *Id.*

The supreme court first determined that Palacios's title was not dispositive. *Id.* at 74. Rather, because the tasks Palacios performed for the defendant "were the same as those that might be executed by a legal assistant as a full-time employee of a law firm or by a legal assistant in the legal department of a party," the analysis applicable to a nonlawyer employee of a law firm also applied to Palacios. *Id.* at 74. In conducting this analysis, prejudice need not be taken into account because "the issue is whether there is a genuine threat of disclosure, not whether disclosure materialized." *Id.*

As a nonlawyer employee of the law firm, Palacios was subject to an irrebuttable presumption "that confidences and secrets were imparted" to her in connection with her prior employment. *Id.* at 74–75; *see also In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) (orig. proceeding). Palacios was also subject to a second, rebuttable presumption that she had shared the confidences with her new employer. *In re Am. Home Prods.*

–8–

*Corp.*, 985 S.W.2d at 75; *see also In re Guar. Ins. Servs., Inc.*, 343 S.W.3d at 134. The supreme court determined that:

> *the only way* the rebuttable presumption can be overcome is: (1) to instruct the legal assistant "not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation," and (2) to "take other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment, absent client consent."

*In re Am. Home Prods Corp.*, 985 S.W.2d at 75 (quoting *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex. 1994) (orig. proceeding)).

A simple, informal admonition to a nonlawyer employee not to work on a matter on which he worked before is not enough to overcome the presumption. *In re Columbia Valley Healthcare Sys., L.L.P.*, 320 S.W.3d at 826. Further, the "other reasonable measures must include, at a minimum, formal, institutionalized screening measures that render the possibility of the nonlawyer having contact with the file less likely." *Id.* In determining whether these measures constitute "effective screening," courts consider:

> (1) the substantiality of the relationship between the former and current matters; (2) the time elapsing between the matters; (3) the size of the firm; (4) the number of individuals presumed to have confidential information; (5) the nature of their involvement in the former matter; and (6) the timing and features of any measures taken to reduce the danger of disclosure.

*Id.* at 824–25. "[T]he ultimate question in weighing these factors" is not whether the screening actually worked, but "whether the second firm 'has taken measures sufficient to *reduce* the potential for misuse of confidences to an *acceptable* level.'" *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d at 135 (quoting *Phoenix Founders*, 887 S.W.2d at 836). If, despite the screening measures used by the employer, the employee "actually works on the case at her employer's directive," and "the employer should know about the conflict of interest, then the presumption of shared confidences must become conclusive." *In re Columbia Valley Healthcare Sys., L.P.*, 320

–9–

S.W.3d at 827. If a party fails to rebut the presumption that confidential information was shared by the nonattorney or if the presumption of shared confidences is conclusive, disqualification of the attorney is required. *Id.* at 827–28; *In re Am. Home Prods. Corp.*, 985 S.W.2d at 76. The "test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure." *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d at 828 (quoting *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex. 1994) (orig. proceeding)).

## Analysis

RSR first contends the trial court erred by applying the analysis set out in *American Home* to Bickel & Brewer's contacts with Sobarzo. RSR argues that Texas Disciplinary Rule 4.02 allowed Bickel & Brewer to communicate ex parte with a former employee of a corporate adversary and, to the extent Bickel & Brewer may have obtained privileged or confidential information during its meetings with Sobarzo, the trial court should have applied the standard in *Meador* in determining whether disqualification was required.

Texas Disciplinary Rule 4.02 addresses the ability of a lawyer to communicate with a person represented by counsel. TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A, art. 10, § 9 (West 2005). It "forbids a lawyer from communicating with another person only if the lawyer *knows* the person has legal counsel in the matter." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 334 (Tex. 1999) (orig. proceeding); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(a). The purpose of rule 4.02 is "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 259 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (quoting *In*

*re News Am. Publ'g, Inc.*, 974 S.W.2d 97, 100 (Tex. App.—San Antonio 1998, orig. proceeding) (en banc)).

Relying on comment 4 to rule 4.02, RSR argues that Bickel & Brewer was not prohibited from contacting a former employee of a "represented organization" and that such conduct is allowed to further the truth-seeking aspirations of the litigation process.[4] Inppamet is not, however, complaining that Bickel & Brewer's contacts with Sobarzo interfered with Inppamet's relationship with its attorneys or that Bickel & Brewer improperly communicated with someone who was represented by counsel. Rather, Inppamet contends Bickel & Brewer improperly obtained Inppamet's privileged or confidential information from Sobarzo, a former member of Inppamet's litigation team. We conclude, therefore, that rule 4.02 does not control our analysis in this case.

We next turn to RSR's contention that the trial court erred by applying the analysis in *American Home* to determine whether disqualification of Bickel & Brewer was required. RSR argues that *American Home* applies only when a nonlawyer employee "switches sides" and the employee's old and new positions were (1) under the direct supervision of a lawyer, and (2) aid in the lawyer's rendition of legal services. RSR asserts that, because Sobarzo was not employed as a nonlawyer legal assistant, the trial court erred by applying *American Home*, rather than *Meador*, in determining whether Bickel & Brewer's contacts with Sobarzo required the firm's disqualification.

We conclude the trial court did not err by determining that *Meador* does not apply in this case. In *Meador*, the former employee was not a member of the opposing party's litigation team and had access to privileged information only because she saw it on her supervisor's desk. After

---

[4] Comment 4 to rule 4.02 provides, in relevant part, that the rule "does not prohibit a lawyer from contacting a former employee of a represented organization . . . ."

–11–

hiring Meador's attorney to represent her in a claim against her former employer, the employee gave the privileged information to her attorney. The attorney did not solicit the former employee's help in obtaining access to the documents, and the employee did not work with her attorney on a daily basis regarding the *Meador* litigation. Further, other than the attorney-client relationship, the attorney did not have a contractual relationship with the former employee.

In this case, Sobarzo was a member of Inppamet's litigation team and participated in formulating strategy, gathering evidence, preparing discovery responses, investigating facts applicable to the case, and providing information requested by Inppamet's attorneys. Although Sobarzo made the first overture, RSR's Chilean counsel responded and agreed to meet with Sobarzo. Bickel & Brewer also agreed to meet with Sobarzo. Attorneys and other representatives of the Bickel & Brewer firm ultimately spent about 150 hours over nineteen days in meetings with Sobarzo. Bickel & Brewer was involved in obtaining an agreement under which Sobarzo was paid for the time he spent meeting with Bickel & Brewer regarding this case. Bickel & Brewer also was involved in obtaining an agreement that provided significant protections to Sobarzo in exchange for information and documents relating to Inppamet. During his meetings with Bickel & Brewer, Sobarzo disclosed confidential information belonging to Inppamet. Unlike *Meador*, this case does not involve a situation where the attorney with access to the opposing party's confidential information did not participate in the acquisition of the information.

Further, we do not read *American Home* as narrowly as RSR suggests. The overriding concern in *American Home* was the "unacceptably high" risk that a person who "functioned as a legal assistant" might disclose to a new employer confidential information belonging to the opposing party. *In re Am. Home Prods. Corp.*, 985 S.W.2d at 74–75. A former employee of the opposing party who was a member of the party's litigation team would have access to the same

–12–

types of confidential information as a nonlawyer employee of either retained counsel or the legal department of the opposing party. We conclude that an attorney's relationship with a former employee of the opposing party who was a member of the opposing party's litigation team carries the same unacceptably high risk of disclosure of confidential information as does the hiring by an attorney of a legal assistant who previously performed work for the opposing party. *See In re SAExploration*, 2012 WL 6017717, at *4 ("We conclude that the disqualification standard applicable to nonlawyers also applies here in light of [the former employee's] multiple corporate roles at SAE."); *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 146–47 (Tex. App.—Fort Worth 2002, orig. proceeding [mand. denied]) (applying *American Home* to former employee of party working as a consultant to opposing party's retained counsel). Accordingly, the same standards apply to a former employee of an opposing party who was a member of the opposing party's litigation team as would apply to a former nonlawyer employee of either an opposing party's retained counsel or the opposing party's legal department. *See In re SAExploration*, 2012 WL 6017717, at *4; *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d at 147.

We conclude a former employee of an opposing party who was a member of the opposing party's litigation team is subject to the conclusive presumption that confidential information about the litigation was imparted to him in connection with his prior employment. *See In re Am. Home Prods. Corp.*, 985 S.W.2d at 74–75; *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d at 147. Further, the former employee is also subject to a second, rebuttable presumption that the former employee has disclosed confidential information through the subsequent relationship with counsel for the opposing party. *See In re Am. Home Prods. Corp.*, 985 S.W.2d at 75; *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d at 147. We conclude the second presumption can be rebutted by a showing that once an attorney knows a former employee of the opposing party was a member of the opposing party's litigation team and had access to

–13–

confidential information relating to the litigation, the attorney either (1) maintains contact with the former employee only through formal discovery, such as a deposition or document request, or (2) uses formal, institutionalized screening measures that reduce the potential for misuse of confidences to an acceptable level. *See In re Guar. Ins. Servs., Inc.*, 343 S.W.3d at 135; *In re Am. Home Prods. Corp.*, 985 S.W.2d at 76; *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d at 148. If an attorney maintains contact with the former employee in any other manner, the presumption the former employee shared confidential information is not rebutted, and the attorney is subject to disqualification.

In this case, it is undisputed that Sobarzo was a member of Inppamet's litigation team. Accordingly, there is an irrebuttable presumption that Sobarzo was in possession of Inppamet's confidential information relating to this litigation. We next turn to whether RSR rebutted the presumption that Sobarzo disclosed Inppamet's confidential information to Bickel & Brewer. Although BMAJ and Bickel & Brewer cautioned Sobarzo not to disclose confidential information in his possession, a simple, informal admonition to a nonlawyer former employee of an opposing party not to work on a matter is not enough to overcome the presumption. *In re Columbia Valley Healthcare Sys., L.L.P.*, 320 S.W.3d at 826. After Bickel & Brewer knew Sobarzo was a member of Inppamet's litigation team and possessed confidential information belonging to Inppamet, Bickel & Brewer continued to meet informally with Sobarzo and was involved in obtaining both an agreement that compensated Sobarzo for the time spent meeting with the firm on this case and an agreement that gave Sobarzo significant protections in return for providing information and documents relating to Inppamet. Further, Bickel & Brewer failed to either instruct Sobarzo not to work on the litigation or use formal, institutionalized screening measures to reduce the potential for misuse of confidences to an acceptable level. Rather, the sole purpose of meeting with Sobarzo was to discuss the pending litigation with Inppamet. *See*

–14–

*id.* at 827 ("A law firm that directs a nonlawyer employee to work on a forbidden case and that reasonably should know about the conflict of interest is not strictly adhering to a screening process. When this happens, the threat that confidences will be shared becomes unduly high, and disqualification is required."). Inppamet demonstrated a genuine threat of disclosure of its confidential information by Sobarzo to Bickel & Brewer. Therefore, the trial court did not abuse its discretion by ordering that Bickel & Brewer be disqualified from any further participation in the case.[5]

## Waiver

RSR finally asserts that Inppamet was precluded from relying on *American Home* because it initially sought to disqualify Bickel & Brewer under the standard set out in *Meador* and failed to argue *American Home* applied until after a number of hearings before the special master. However, the relief sought by Inppamet was the disqualification of Bickel & Brewer based on the firm's contacts with Sobarzo. We have concluded the analysis set out in *American Home* applies to this case. The trial court had no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Accordingly, Inppamet did not waive the application of *American Home* by failing initially to cite that case when Inppamet sought the disqualification of Bickel & Brewer.

---

[5] Because we conclude that Bickel & Brewer's relationship with Sobarzo is sufficient to require disqualification, we need not consider whether Bickel & Brewer's relationship with BMAJ combined with BMAJ's contacts with Sobarzo also warranted disqualification. *See In re Am. Home Prods. Corp.*, 985 S.W.2d at 77–82 (determining whether co-counsel was required to be disqualified along with primary counsel based on relationship with tainted counsel).

–15–

## Conclusion

We conclude RSR has failed to show it is entitled to the relief requested.  *See* TEX. R. APP. P. 52.8(a); *Walker*, 827 S.W.2d at 839–40.  Accordingly, we deny the petition for writ of mandamus.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130124F.P05