# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0499

════════════

IN RE RSR CORPORATION AND QUEMETCO METALS LIMITED, INC., RELATORS

═══════════════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════════════════════════════════════

**Argued September 2, 2015**

JUSTICE DEVINE delivered the opinion of the Court.

This original proceeding concerns whether the trial court abused its discretion by disqualifying plaintiffs' counsel because they "worked so closely" with a defendant's former finance manager. Treating the finance manager like a side-switching paralegal, the trial court applied *In re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998) (orig. proceeding), and found plaintiffs' counsel should have screened him from participating in the case. We hold the *American Home Products* screening requirement does not govern a fact witness with information about his former employer if his position with that employer existed independently of litigation and he did not primarily report to lawyers. To the extent the fact witness discloses his past employer's privileged and confidential information, the factors outlined by *In re Meador*, 968 S.W.2d 346 (Tex. 1998) (orig. proceeding), should guide the trial court's discretion regarding disqualification. Because the trial court improperly disqualified plaintiffs' counsel under *American Home Products*, we conditionally grant mandamus relief.

## I. Background and Procedural History

In the underlying case, Bickel & Brewer represent RSR Corporation and Quemetco Metals Limited, Inc. (collectively, "RSR") in their suit against Inppamet S.A.,[1] a Chilean manufacturer of anodes used in the mining industry. RSR had licensed its anode-production information to Inppamet in 2003. In return, Inppamet promised to pay RSR a fee for every anode sold. In 2008, RSR sued Inppamet in Texas for (among other things) breaching their contract and misappropriating trade secrets. That same year, Inppamet sued RSR in Chile. The law firm of Bofill Mir & Alvarez Jana (BMAJ) represents RSR in the Chilean litigation.

Hernan Sobarzo was Inppamet's finance manager from April 2007 to April 2010. Sobarzo's self-described duties included ensuring cash flow and financing, as well as calculating Inppamet's payments to RSR under the 2003 agreement. He had access to data regarding Inppamet's financial statements, foreign trading, and government reports. When RSR requested an audit in 2009 concerning Inppamet's payments to RSR, Sobarzo gathered information and discussed the audit with Inppamet's lawyers and company officers. He also discussed litigation strategy with company officers, communicated with Inppamet's lawyers, and reviewed invoices describing the attorneys' work. Notably, Sobarzo's contract with Inppamet stated that all information Sobarzo obtained during his employment was confidential and could not be disclosed to third parties, even after his employment ended.

_____

[1] RSR also sued Plastic and Metal Parts, Inc., and Andreas Siegmund. For convenience, we refer only to Inppamet. Although Siegmund is a defendant in the underlying suit and a real party in interest in this original proceeding, he has not made an appearance here.

In April 2010, Sobarzo resigned from Inppamet. He took with him around 2.3 gigabytes of data, consisting primarily of emails—around 15,000 to 17,000 of them. The emails included some of Sobarzo's personal communications, as well as emails between Inppamet's lawyers, managers, and directors.

Months later, an attorney with BMAJ, RSR's Chilean counsel, emailed Sobarzo and asked Sobarzo to contact him. The two eventually met to discuss Inppamet and the feud with RSR. More meetings followed, often involving Bickel & Brewer. Twice Sobarzo traveled to New York City to meet with Bickel & Brewer. At other times, attorneys from Bickel & Brewer traveled to Chile. The trial court found Sobarzo met with Bickel & Brewer's attorneys and consultants at least 19 times for a total of more than 150 hours.

The parties dispute what happened during these meetings. But this much is clear: Sobarzo supplied significant information regarding Inppamet, accusing Inppamet of underpaying RSR under the 2003 agreement. He discussed Inppamet's audit of the payments and even provided Bickel & Brewer a spreadsheet concerning the payment calculations. Bickel & Brewer attorneys looked on as Sobarzo displayed Inppamet documents on his computer, and BMAJ possesses a pen drive with many Inppamet documents. The parties, of course, dispute the nature and number of documents Bickel & Brewer reviewed. RSR asserts Bickel & Brewer always told Sobarzo not to reveal Inppamet's privileged or confidential information during their interviews. Inppamet, however, contends Bickel & Brewer freely viewed the documents Sobarzo took from Inppamet, many of which were privileged and confidential. Regarding the pen drive, the parties dispute the extent that Bickel

3

& Brewer reviewed the documents on the pen drive and whether BMAJ took adequate precautions against viewing privileged information.

Sobarzo insisted on compensation for his time with BMAJ and Bickel & Brewer. The trial court found Sobarzo charged $1,600 per day, which was four times his current salary. RSR asserts Sobarzo misrepresented his salary and led RSR's attorneys to believe they were fairly compensating him for travel expenses and lost time. In May 2011, BMAJ and Sobarzo formalized the terms of Sobarzo's compensation in a written consulting agreement. As the trial court noted, though the agreement was between BMAJ and Sobarzo, RSR and Bickel & Brewer also participated in the decision to retain him. Inppamet argues the contract required BMAJ to pay Sobarzo for 30 hours of work per week, guaranteeing Sobarzo nearly $1 million by the time the contract's three-year term passed, in addition to other benefits. In response, RSR points to a section of the agreement stating BMAJ had no obligation to use Sobarzo's services and would pay Sobarzo only for work actually performed.

Two months after signing the agreement, however, Sobarzo quit consulting with BMAJ and Bickel & Brewer. He then signed an affidavit recanting his accusations against Inppamet and asserting Inppamet never underpaid RSR.

Concerned by Bickel & Brewer's exposure to Sobarzo and his documents, Inppamet moved to disqualify Bickel & Brewer from representing RSR. Former Texas Supreme Court Justice Deborah Hankinson, who had been appointed by the trial court as a special master, denied the motion to disqualify. She did, however, order Bickel & Brewer to destroy one document—a spreadsheet with Inppamet's payment calculations. Inppamet appealed the disqualification ruling to the trial

4

court. The trial court, relying primarily on *American Home Products*, found that BMAJ was "irreparably tainted" by hiring Sobarzo and reviewing his documents. It also found a genuine threat that BMAJ or Sobarzo had disclosed confidential information to Bickel & Brewer and accordingly ordered Bickel & Brewer's disqualification. Beyond the spreadsheets for calculating Inppamet's payments to RSR and information regarding the audit, the trial court's order did not identify specific documents Bickel & Brewer reviewed. The court of appeals subsequently denied RSR's petition for mandamus relief. 405 S.W.3d 265, 268 (Tex. App.—Dallas 2013).

## II. The Proper Disqualification Standard

"Disqualification is a severe remedy." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding). A party whose counsel is improperly disqualified has no adequate remedy by appeal. *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam). Thus, if the trial court abused its discretion by disqualifying Bickel & Brewer, we may grant mandamus relief. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam). A trial court abuses its discretion if it incorrectly analyzes or applies the law. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam). Of course, we may not make factual determinations in mandamus proceedings. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 648 (Tex. 2009) (orig. proceeding).

RSR asserts the trial court abused its discretion by disqualifying Bickel & Brewer under *American Home Products*, a case discussing disqualification of counsel for hiring the other side's former paralegal or legal assistant. *See* 985 S.W.2d at 71. According to RSR, Sobarzo is a fact witness and a different standard applies. We agree and hold the factors test from *In re Meador*

5

properly balances Inppamet's need to protect privileged information against RSR's interest in retaining counsel.

*Meador* applies when attorneys "receive[] an opponent's privileged materials outside the normal course of discovery." 968 S.W.2d at 352. In *Meador*, a company president's executive assistant copied a letter from the company's attorneys regarding a pending lawsuit. *Id.* at 348. The executive assistant later quit her job, taking the copy with her. *Id.* She decided to sue the company and contacted an attorney already representing a client in a suit against the company. *Id.* at 349. The attorney agreed to represent her as well. *Id.* During their meeting she gave him a copy of the company's letter from its attorneys, followed by copies of several other company documents. *Id.* Although the attorney "should have known after the most cursory review that the materials . . . were privileged," he still appeared to have "thoroughly reviewed" them. *Id.* at 352. The trial court ordered the attorney to return the company's documents, but it refused to disqualify the attorney from representing his original client. *Id.* at 349.

On mandamus review, we held that "the trial court, giving due consideration to the importance of our discovery privileges, must consider all the facts and circumstances to determine whether the interests of justice require disqualification." *Id.* at 351. At times, "a lawyer who has been privy to privileged information improperly obtained from the other side must be disqualified, even though the lawyer was not involved in obtaining the information." *Id.* But not always. Relevant factors for the trial court's consideration include:

1)      whether the attorney knew or should have known that the material was privileged;

2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3) the extent to which the attorney reviews and digests the privileged information;

4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5) the extent to which movant may be at fault for the unauthorized disclosure;

6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id.* at 351–52.

The factors explained by *Meador* are appropriate for evaluating whether Bickel & Brewer should be disqualified in this case. Like the executive assistant in *Meador*, Sobarzo secreted documents from his employer when he quit and provided them to the opposing side's counsel. Like the attorney in *Meador*, Bickel & Brewer received the opposing side's documents not through discovery requests but rather "outside the normal course of discovery." *Id.* at 352. To the extent Bickel & Brewer should have known any documents were privileged, they still were not "directly involved in wrongfully procuring" them. *Id.*

*Meador* provides a flexible, fact-oriented standard so that trial courts may reach a just result. But here, the trial court's order reflects that it neither considered the *Meador* factors nor resolved the factual disputes necessary to do so. The trial court applied the wrong standard.

Inppamet, however, argues that Sobarzo's status as a paid consultant and his extensive contact with Bickel & Brewer calls for a different rule. Citing *American Home Products*, Inppamet

7

claims we must presume Sobarzo shared Inppamet's confidences with Bickel & Brewer and argues RSR cannot overcome this presumption. Inppamet also asserts that Bickel & Brewer's close contact with BMAJ, as well as with Sobarzo, created a genuine threat of disclosure of Inppamet's confidences.

*American Home Products* concerned a law firm that hired its opposing counsel's former legal assistant. 985 S.W.2d at 71. In such cases, two presumptions ensure that any law firm hiring a side-switching paralegal is disqualified unless it has screening measures in place. First, it is conclusively presumed that "a paralegal or legal assistant who has worked on a case" received confidences and secrets. *Id.* at 74. Second, it is presumed that the paralegal shared the confidential information with the new employer. *Id.* at 75. This latter presumption is not conclusive, but may only be overcome by (1) "instruct[ing] the legal assistant 'not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation," and (2) "tak[ing] other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment." *Id.* (quoting *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex. 1994) (orig. proceeding)). Such "other reasonable steps" must include "formal, institutionalized screening measures that render the possibility of the nonlawyer having contact with the file less likely." *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 826 (Tex. 2010) (orig. proceeding).

In other words, under *American Home Products* and its progeny, if the side-switching employee is not screened but "works on the case at her [new] employer's directive, . . . and the [new] employer reasonably should know about the conflict of interest, then the presumption of shared

8

confidences must become conclusive." *Id.* at 827. Simply put, if Sobarzo is the type of side-switching employee that *American Home Products* contemplated, then neither BMAJ nor Bickel & Brewer could retain him as a consultant in the underlying case. Even if Sobarzo was only retained by BMAJ, Bickel & Brewer would still be subject to disqualification because its attorneys had substantive communications about the case with Sobarzo. *American Home Products*, 985 S.W.2d at 78.

We conclude, however, that *American Home Products* does not apply to a fact witness such as Sobarzo. His position with his former employer existed independently of litigation, and his function was not primarily to report to lawyers. Sobarzo was Inppamet's finance manager with firsthand knowledge of facts, and thus his contact with Inppamet lawyers, without more, does not shield him from RSR's contact. Indeed, we have only applied the *American Home Products* presumptions to paralegals, legal assistants, or other nonlawyers who are directly supervised by attorneys and are retained to assist with litigation.[2] We applied the same presumptions in several cases predating *American Home Products*, but again, only to legal staff.[3] To be sure, we take a functional approach, looking not only to labels and job titles but also to the side-switching employee's duties at the original employer. Nonetheless, we examine whether the tasks "performed

---

[2] *See Guar. Ins. Servs.*, 343 S.W.3d at 132–34 (considering side-switching paralegal who, at original firm, reviewed the case file, identified persons with knowledge of relevant facts, and drafted a response to a request for disclosures); *Columbia Valley Healthcare Sys.*, 320 S.W.3d at 822 (considering side-switching legal assistant who, at original firm, "was a custodian of records and was responsible for filing many privileged documents concerning the suit").

[3] *See Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467–68 (Tex. 1994) (orig. proceeding) (per curiam) (considering side-switching legal secretary who, at original firm, handled case files, interviewed clients, and prepared investigative reports); *Phoenix Founders*, 887 S.W.2d at 833 (evaluating side-switching paralegal who located a pleading and discussed the case with one firm's lead counsel before being hired by the opposing firm).

9

were the same as those that might be executed by a legal assistant as a full-time employee of a law firm or by a legal assistant in the legal department of a party." *American Home Products*, 985 S.W.2d at 74. If so, then the "professional obligations that inhere when performing services for a client must obtain." *Id.* at 77. But if not, the employee may be a fact witness and screening is not required.

Even the Texas Disciplinary Rules of Professional Conduct allow an attorney to contact the former employees of the opposing party. Under Rule 4.02(a), a lawyer, in representing a client, may not communicate with a person or organization "the lawyer knows to be represented by another lawyer regarding that subject." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A. This prohibition extends to certain "persons *presently* having a managerial responsibility" in the organization or "*presently* employed by" the organization. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a) (emphasis added). But "this Rule does not prohibit a lawyer from contacting a former employee of a represented organization." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02 cmt. 4.

Applying the bright-line rule from *American Home Products* to fact witnesses instead of legal staff would limit informal discovery and fact-gathering. "Denial of access to such a person would impede an adversary's search for relevant facts . . . ." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 100 cmt. g (AM. LAW INST. 2000). If attorneys abuse their freedom by eliciting privileged or confidential information from fact witnesses, then their conduct is subject to *Meador*. But *American Home Products* does not create a blanket rule against any contact with such

10

fact witnesses, even if they were once employed by the opposing side and had contact with that side's attorneys.

Inppamet emphasizes Bickel & Brewer's extensive contact with Sobarzo, the compensation Sobarzo received, and Sobarzo's confidentiality agreement with Inppamet. These facts, of course, are relevant to *Meador*, but they do not call for an entirely different analytical framework. Frequent contact with Sobarzo and knowledge of his confidentiality agreement may inform at least two of the *Meador* factors: "whether the attorney knew or should have known that the material was privileged," and "the extent to which the attorney reviews and digests the privileged information." *Meador*, 968 S.W.2d at 351–52. Such facts inform the *Meador* analysis; they do not call for its abandonment. Neither does Sobarzo's compensation require the presumptions of *American Home Products* to be applied here. Although attorneys may not compensate a witness "contingent upon the content of the testimony of the witness or the outcome of the case," they may still provide reasonable compensation for travel expenses and the witness's loss of time. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.04(b). If an attorney violates this rule, the opposing side should so argue and seek an appropriate remedy. But compensation on its own does not turn a fact witness into a paralegal or legal assistant subject to the *American Home Products* presumptions.

Inppamet points to a court of appeals decision disqualifying a firm for hiring an engineer as a consultant in a lawsuit against her prior employer, Bell Helicopter Textron. *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 144 (Tex. App.—Fort Worth 2002, orig. proceeding [mand. denied]). The employee had worked as an engineer, accident investigator, and chief of flight safety for Bell Helicopter. *Id.* at 144. At times, she worked with Bell Helicopter's counsel to develop legal

11

strategies in cases involving helicopter crashes. *Id.* Eventually, she left Bell Helicopter and was later hired by a firm suing Bell Helicopter. *Id.* The court of appeals applied the *American Home Products* presumptions because the engineer-turned-consultant was part of the legal team that developed defenses at Bell Helicopter. *Id.* at 145–47. Although the plaintiffs presented affidavits averring the consultant never divulged Bell Helicopter's privileged information, trade secrets, or trial strategies, the court of appeals held the plaintiffs' counsel must be disqualified. *Id.* at 147, 151. It held her status as a fact witness did not prevent disqualification. *Id.* at 150–51.

For the reasons already discussed, the *American Home Products* presumptions do not apply to fact witnesses who, at their original place of employment, were not hired for litigation purposes and were not directly supervised by lawyers. We disapprove of *Bell Helicopter* for disqualifying a firm that hired the opposing side's former engineer without first considering the *Meador* factors.

Finally, Inppamet points to a recent opinion by the Texas Committee on Professional Ethics concerning when a law firm hires an opposing law firm's former employee "who is *not* a lawyer, paralegal or secretary." Tex. Comm. on Prof'l Ethics, Op. 650, 78 Tᴇx. B.J. 579, 581 (2015) (emphasis added). The Commission determined that the hiring law firm must withdraw from the representation if

> the employee in question had in the prior employment worked on the lawsuit or otherwise had access to information concerning the prior employer's representation of the opposing party in the lawsuit and the hiring law firm fails to take effective steps, which normally would include screening the newly hired employee, to prevent the employee from disclosing or using in the hiring law firm confidential information related to the lawsuit. In all other circumstances, the hiring law firm will not be required to withdraw from the representation unless, regardless of the hiring law firm's attempts to prevent improper disclosure or use of any confidential information

12

relating to the lawsuit acquired by the employee in the prior law firm, the employee actually discloses or uses such confidential information in the hiring law firm.

*Id.*

This ethics opinion, however, does not discuss fact witnesses. The opinion refers to nonlawyers and nonparalegals, but it only applies to the opposing law firm's employees. Here, Sobarzo was originally employed by a party to the case. As a finance manager, he has firsthand knowledge of relevant facts, and RSR was free to pursue these facts. To the extent RSR's counsel abused this freedom, its conduct is governed by *Meador* rather than *American Home Products*.

* * *

We hold the trial court abused its discretion by disqualifying Bickel & Brewer under *American Home Products*. We do not decide whether disqualification would have been proper under *Meador* because the trial court did not reach the issue and did not resolve all fact issues relevant to a *Meador* analysis. We conditionally grant mandamus relief. The writ will issue only if the trial court does not vacate its order granting Inppamet's motion to disqualify.

_____
John P. Devine
Justice

Opinion delivered: December 4, 2015

13