**Opinion filed June 18, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-26-00131-CV

_____

## IN RE PIONEER NATURAL RESOURCES USA, INC.

### Original Mandamus Proceeding

### O P I N I O N

This original proceeding involves the question of whether a defendant's counsel should be disqualified for his discussions, outside of formal discovery, with a plaintiff's former in-house counsel and potential witness regarding matters beyond the scope of an existing trial court order that narrowly waived the attorney-client privilege. Relator, Pioneer Natural Resources USA, Inc. (Pioneer), an oil and gas company, filed this original petition for writ of mandamus asserting that Respondent, the Honorable R. Shane Seaton, presiding judge of the 118th District Court of Martin County, clearly abused his discretion by denying Pioneer's motion to disqualify counsel for Real Parties in Interest, John Paul Merritt; Pony Oil LLC; Pony Oil Operating, LLC; and AXE Energy LLC (Defendants). Pioneer requests that we

order Judge Seaton to grant its motion to disqualify. Because we afford great deference to the trial court's ability to judge the witnesses' credibility and make appropriate findings of fact, we conclude that the trial court did not clearly abuse its discretion in ruling as it did, and we deny Pioneer's petition for writ of mandamus.

## I. *Factual and Procedural Background*

Pioneer sued Defendants for tortious interference, alleging that Defendants acquired "top leases,"[1] which interfered with Pioneer's plan to conduct a horizontal drilling program in Midland and Martin Counties. Pioneer alleged that Defendants' actions clouded title to its oil and gas interests and caused the delay and cancellation of planned horizontal drilling operations. Pioneer is seeking $534 million in damages in the lawsuit below.[2]

After receiving discovery, Defendants believed that Pioneer's damage model was manufactured strictly for litigation purposes, and they filed several motions, seeking sanctions, to compel discovery, and a dismissal. Approximately one month later, Defendants' counsel, Robert Vartabedian, arranged to have lunch with Jefferson Rees, Pioneer's former in-house counsel, who had left the company a year earlier. They alluded to the pending litigation but did not discuss it substantively.

---

[1]"Basically, a top lease is a subsequent oil and gas lease which covers one or more mineral interests that are subject to a valid, subsisting prior lease." *See TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 462 (Tex. 2018) (quoting *BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 478 n.1 (Tex. 2017)). Although the supreme court's "basic explanation of what a top lease is [does] not expressly say so, commentators accept that a top lease becomes effective as to those mineral interests subject to a bottom lease only upon termination of the bottom lease." *Id.* (first quoting Norman J. Hyne, *Dictionary of Petroleum Exploration, Drilling & Production* 530 (1991) ("[A top lease is an] oil and gas lease on acreage that currently has a valid lease called the bottom lease. When the bottom lease expires, the top lease becomes effective."); then quoting 8 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law: Manual of Oil and Gas Terms* 1081 (LexisNexis Matthew Bender 2017) ("[A] lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated."); and then quoting 1 Ernest E. Smith & Jacqueline Lang Weaver, *Texas Law of Oil and Gas* § 4.5[F] (2d ed. 2015) ("By their nature, top leases delay the new lessee's rights until the termination of an existing lease.")).

[2]We express no opinion as to the merits of Pioneer's petition nor the Defendants' answers and affirmative defenses thereto.

Following a hearing on Defendants' motions, the trial court granted in part their motion to compel discovery, and found that "Pioneer ha[d] waived attorney-client and work product privileges through offensive use" as to the following:

> a.  The narrow topic of the creating and editing of Pioneer's Rig Schedule (known as PXD049565) and <u>specifically</u> related communications; [and]
>
> b.  The narrow topic of the decision-making process to add or remove W/2 of Section 3 wells from Pioneer's Rig Schedule.

The trial court ordered Pioneer to produce responsive discovery concerning these issues.  The trial court also ordered Pioneer to produce a witness for deposition, while clarifying that the waiver of privilege for the deposition would "be limited to the basics (who, what, where, when, why[,] and how) of creating and editing [Pioneer's Rig Schedule] <u>ONLY</u>."  The trial court has yet to rule on Defendants' motion for sanctions based on Pioneer's alleged perjury and discovery abuse.

Approximately four months later, Vartabedian called Rees and discussed the deposition testimony of Pioneer's in-house counsel, Barry Thomas.  According to Vartabedian, the two discussed the trial court's ordered privilege waiver and Thomas's deposition testimony regarding the drilling scheduling decisions, which Rees purportedly contradicted.  Vartabedian told Rees to review the order and consider if he was willing to testify regarding information within the waiver.  A few days later, the two spoke by phone again; according to Vartabedian, they discussed securing independent counsel for Rees as well as Rees's role in Pioneer's drilling scheduling decisions.  Eleven days later, Vartabedian called Rees but this time he recorded the conversation.  The two again discussed Pioneer's drilling scheduling decisions.  Over two months later, but shortly after Rees had secured independent counsel, Defendants produced a redacted version of the recorded conversation to Pioneer and filed the entire recording with the trial court.

3

Pioneer proceeded to file a motion seeking to disqualify Vartabedian and his firm from representing Defendants and for sanctions, contending that they procured information from Rees that went beyond the trial court's limited waiver and delayed producing the discoverable recorded conversation. The trial court conducted a two-day evidentiary hearing on the motion, during which Rees and Vartabedian testified. The trial court listened to the recorded conversation and reviewed evidence related to the conversations. The trial court also permitted Rees to testify in camera for approximately thirty minutes, without Defendants' counsel present.

Following the hearing, the trial court entered an order granting Pioneer's motion in part and denying the motion in part. The trial court ordered that no use or mention be made of the recorded conversation or "any alleged conversations with Rees." It found that much of the conversation "was confidential information . . . that was believed to substantiate what Vartabedian had suspicions of since the beginning of this case (i.e. 'Pioneer is faking an injury')." It further found that Rees later disclaimed this information "as incorrect or exaggerated due to his lack of memory or lack of involvement." The trial court stated that "[t]ailored sanctions can adequately mitigate any prejudice." The trial court ordered Defendants to turn over any documents relating to conversations with Rees, prohibited Rees from being deposed, and awarded Pioneer attorney's fees and costs "limited to the costs of briefing/hearing this emergency Motion." The trial court denied Pioneer's request for continued abatement, disqualification, and discipline.

The trial court issued the following findings of fact and conclusions of law:

1. The Court should apply the analysis from *In re Meador*, 968 S.W.2d 346 (Tex. 1998), even assuming arguendo some improper procurement may have occurred.

2. After weighing the evidence of this record, the *Meador* factor of knowledge of privilege leans in favor of disqualification.

4

3. After weighing the evidence of this record, the *Meador* factor of prompt notification weighs in favor of remedial measures, not disqualification.

4. After weighing the evidence of this record, the *Meador* factor of significance/prejudice favors tailored sanctions that can adequately mitigate prejudice.

5. After weighing the evidence of this record, the *Meador* factor of fault for disclosure unquestionably favors Pioneer.

6. After weighing the evidence of this record, the *Meador* factor of prejudice from removing counsel strongly favors denying disqualification in favor of alternative relief.

7. On the present record, Defendants have not established that the crime-fraud exception applies to overcome Pioneer's privilege relating to the out-of-scope strategic/settlement/board communications.

8. Most, but not all, of the recorded and unrecorded discussions materially exceeded the narrow waiver order of the basics of who, what, where, when, why and how.

The trial court concluded that the remedies it provided would "protect Pioneer's privileged information and the integrity of these proceedings while avoiding the severe prejudice to Defendants from the 'nuclear option' of removal of their counsel." It summarized: "[T]his ruling preserves the narrow waiver the Court previously entered, protects Pioneer's privileged information, sanctions misuse by excluding the recording and any information derived from it, and compels turnover, all the while keeping this case moving forward without the extraordinary, case-disrupting remedy of disqualification."

In its petition for writ of mandamus, Pioneer argues that the trial court clearly abused its discretion by denying disqualification because Vartabedian "tricked" Rees and directly participated in the wrongful invasion of Pioneer's privilege. Pioneer argues that disqualification is mandatory in circumstances involving

5

counsel's wrongful access to privileged information and, alternatively, that application of the *Meador* factors and the Texas disciplinary rules support disqualification. Pioneer asserts that no adequate remedy by appeal exists for the denial of a motion to disqualify. Defendants respond that the trial court "conducted a careful *Meador* analysis and correctly found that tailored remedies—not disqualification—were appropriate."

## II. *Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (orig. proceeding); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court clearly abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding). "In determining whether the trial court clearly abused its discretion, an appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion, even if the mandamus court would have decided the issue differently." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). "The inappropriate denial of a motion to disqualify is an abuse of discretion for which there is generally no adequate remedy on appeal." *In re Murrin*

*Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding); *In re RSR Corp. (RSR I)*, 475 S.W.3d 775, 778 (Tex. 2015) (orig. proceeding); *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam).

## III. *Disqualification*

"'Disqualification is a severe remedy' and when considering disqualification motions, 'courts must adhere to an exacting standard . . . to discourage their use as a dilatory trial tactic.'" *In re RSR Corp. (RSR II)*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding) (quoting *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding)). But "[o]ur profession recognizes few duties more important than protecting client confidences." *In re Zaidi*, 732 S.W.3d 525, 531 (Tex. 2026) (orig. proceeding). This is because "[f]ree discussion should prevail between lawyer and client in order for the lawyer to be fully informed and for the client to obtain the full benefit of the legal system." *Id.* (quoting TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 1). This "ultimately serves the broader societal interest of effective administration of justice." *Id.* (quoting *Paxton v. City of Dallas*, 509 S.W.3d 247, 250 (Tex. 2017)).

In considering disqualification based on trial counsel's access to the opposing party's privileged or confidential information, the manner of review depends upon how counsel obtained the information. When an attorney receives the opposing party's privileged information outside the discovery process and through no wrongdoing of their own, the trial court should consider a variety of factors before disqualifying the attorney, including:

1) whether the attorney knew or should have known that the material was privileged;

2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3)     the extent to which the attorney reviews and digests the privileged information;

4)     the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5)     the extent to which movant may be at fault for the unauthorized disclosure;

6)     the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Meador*, 968 S.W.2d at 351–52. In cases where a member of a law firm's staff switches employment in a case, two presumptions ensure that the person is disqualified from further involvement in the case unless proper screening measures are in place. *RSR I*, 475 S.W.3d at 780; *In re Am. Home Prods. Corp.,* 985 S.W.2d 68, 74 (Tex. 1998) (orig. proceeding). It is presumed that the person who has worked on a case has received confidences and secrets. *RSR I*, 475 S.W.3d at 780. It is also presumed that the person shared the confidential information with the new employer. *Id.* The second presumption can only be overcome by (1) instructing the person not to work on any matter in the case on which they worked during prior employment, and (2) taking reasonable steps to ensure the person does not work in connection with matters in the case on which they worked with the prior firm. *Id.* The Texas Supreme Court has cautioned that applying this bright-line rule to fact witnesses instead of legal staff would limit informal discovery and fact gathering. *Id.* at 781. There is no "blanket rule against any contact with such fact witnesses, even if they were once employed by the opposing side and had contact with that side's attorneys." *Id.* "If attorneys abuse their freedom by eliciting privileged or confidential information from fact witnesses, then their conduct is subject to *Meador*." *Id.*

8

The present case presents the peculiar scenario where Pioneer's alleged sanctionable conduct generated a limited privilege waiver, such that the former in-house counsel for Pioneer became a discoverable fact witness. In this unique set of circumstances, we believe the trial court properly applied and weighed the *Meador* factors. The catalyst for this original proceeding is Pioneer's withholding of discoverable information, which led to the privilege-waiver, and for which a sanctions motion is currently pending. Rees, far from a naive fact witness, is a licensed attorney with access to the publicly available order waiving the attorney-client privilege such that he could easily determine the scope of the waiver. The trial court could well have questioned the proposition that Rees was "tricked" into divulging matters beyond the limited waiver. Yet, Rees, exercising his own professional judgment, apparently did so.

To be sure, the scope of the trial court's waiver is susceptible to some competing interpretation depending on the lens of the reader.[3] While the context of the trial court proceedings may provide clarity on the order's language to those involved in the litigation, the cold record does not lend such enlightenment. Regardless, Vartabedian, emboldened by Pioneer's perceived discovery abuses, construed the waiver *too* broadly. Given these complexities, we do not find fault with the trial court's conclusion to apply the *Meador* factors. Because of the waiver, Rees surely became a fact witness to some extent. *See RSR I*, 475 S.W.3d at 781 (suggesting that *Meador* would apply to such a situation). And whether Vartabedian acted with the intent and purpose to exceed the trial court's waiver is a fact the trial

---

[3]For a matter that has been ongoing since October 2021, only the trial court knows the context contributing to the understood intent of its order—and we do not second-guess the trial court's "reject[ion of] a blanket waiver on these topics." On its face, the breadth of the trial court's order may have been in Defendants' generous interpretation of that language permitting discovery regarding "[t]he narrow topic[s] of the creating and editing of Pioneer's Rig Schedule (known as PXD049565) *and specifically related communications*" and "*the decision-making process* to add or remove W/2 of Section 3 wells from Pioneer's Rig Schedule." (Emphasis added).

court was uniquely capable of determining. *See Zaidi*, 732 S.W.3d at 539 ("A disputed fact issue on intention precludes mandamus relief, as 'we may not make factual determinations in mandamus proceedings.'" (quoting *RSR I*, 475 S.W.3d at 778)); *see also State Farm Lloyds*, 520 S.W.3d at 604.

Further, we find no legal error in the trial court's careful weighing of the *Meador* factors. Knowledge of the privilege certainly weighs in favor of disqualification, but the uncertain scope of the waiver of that privilege slightly mitigates such weight. The record supports the trial court's finding that prompt notification weighed in favor of imposing remedial measures, as the information was disclosed in short order after Rees had secured independent counsel. Although not explicitly addressed in the trial court's findings, we observe that Vartabedian surely examined and digested the disclosed information, but the trial court found that most of this information has been disclaimed by Rees as incorrect or exaggerated. And we agree that the trial court's tailored sanctions adequately mitigate any prejudice from the privilege disclosure, as the trial court ordered that no use or mention be made of the recorded conversation or any alleged conversations with Rees.[4] The trial court also found that Rees had no personal knowledge of the topics that were subject to its narrow waiver of privilege. Indeed, while the trial court found that Pioneer could not be faulted for the disclosure of privileged information by Rees, we cannot ignore that it was Pioneer's conduct that was the catalyst for the limited privilege waiver. Finally, we agree that the prejudice of removing counsel strongly weighs against disqualification, given the lengthy and complex nature of this litigation. *See Murrin Bros.*, 603 S.W.3d at 57 ("Such prejudice to the nonmovant may include the financial burden of obtaining substitute counsel that is not already

---

[4]However, the trial court qualified its order prohibiting the use or mention of the conversations with Rees by including "without further order of this Court." Thus, as discovery progresses and trial proceeds, the trial court has reserved the right to reconsider.

familiar with the case."). This is particularly true with an impending trial setting in this case which has been ongoing for over four years.

The trial court exercised its discretion to fashion a finely tailored remedy to a truly novel situation, one where everyone appears to have spit in the proverbial soup. But having contributed to the ingredients, under these circumstances, they cannot now be heard to complain of the taste. Upon review of the record, we cannot say that the trial court clearly abused its discretion in ruling as it did. *See id.* at 56 ("Mandamus relief is only appropriate when the relators have established that only one outcome in the trial court was permissible under the law."). Accordingly, we conclude that Pioneer has not established its right to mandamus relief. *See Prudential Ins.*, 148 S.W.3d at 135–36.

IV. *This Court's Ruling*

We deny Pioneer's petition for writ of mandamus.

W. BRUCE WILLIAMS
JUSTICE

June 18, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11